## GOODWIN *v.* GOODWIN, EXECUTOR.

EXECUTOR AND ADMINISTRATOR.—*Partial Settlements.*—*Fraud.*—*Mistake.*—Partial settlements of estates by executors and administrators, made to and approved by the court, are only *prima facie* correct, and on final settlement may so far be opened up as to correct frauds or mistakes therein, though not excepted to at the time or appealed from.

SAME.—*Appeal.*—There is no statute authorizing an appeal from a partial settlement of an executor or administrator.

WILL.—*Bequest to a Class.*—A bequest to a class includes all in existence at the death of the testator, unless by the will it appears that a more limited application was intended, and all who are embraced in the class at the time the bequest takes effect.

SAME.—*Legacies.*—*Residuary Legatees.*—*When Estate Vests.*—Where the bequest of what remained of the estate, after paying expenses of administration and also certain legacies which were payable when the legatees named became twenty-one years of age, was to the children of certain sons of the testator that might be at the time living;

*Held,* that when the legacy payable last was due, the residuary legatees became entitled, and at that time the individual children only then living of said sons of the testator, whenever born, and no others, were entitled to share.

SAME.—*Purchase of Legacy by Executor.*—*Trustee.*—The fiduciary character of an executor or administrator extends to all the legatees, and he cannot purchase the legacy of any of them for his benefit or the benefit of the other legatees; and any conveyance of, or receipt for, a legacy he may take for less than its value is void as to such difference, which he holds as trustee for the legatee.

SAME.—*Evidence.*—*Witness.*—Under the statute providing that "in all suits where an executor, administrator or guardian is a party in a case where a judgment may be rendered either for or against the estate represented by such executor," etc., "neither party shall be allowed to testify," etc., an executor who has been allowed credit in his partial settlements for payment of a note made by himself, and a note made by himself, the deceased, and another, is not a competent witness, upon the trial of an exception to said allowance, to testify as to the origin and nature of the claims as debts of the decedent and as to statements in reference thereto made to him by his testator.

PLEADING.—*Rehearing.*—Pursuant to rule 24 of the Supreme Court, which prescribes, that "rehearing must be applied for by petition in writing, setting forth the causes for which the judgment is supposed to be erroneous," the errors supposed to have been committed in the decision must be pointed out particularly.

From the Henry Circuit Court.

*J. Brown, R. L. Polk, D. W. Chambers,* and *E. Saint,* for appellant.

*J. T. Elliott, J. W. Gordon, T. M. Browne,* and *R. N. Lamb,* for appellee.

DOWNEY, J.—The questions to be decided in this case grow out of exceptions by the appellant to the final report of the appellee, as executor of the last will and testament of his testator, Wesley Goodwin, deceased. We need not set out the report at length.

The will was executed on the 18th day of October, 1855; the testator died July 29th, 1860; the will was probated, and letters granted, August 27th, 1860; the inventory was filed October 1st, 1860. On the 9th day of June, 1862, in the common pleas, the executor made a partial settlement, in which he charged himself with the personal assets,

| | |
|---|---|
| Amounting to - - - - - - | $6,758.83 |
| Had credits for payments made, - - - | 2,278.83 |
| Leaving a balance of - - - - | $4,480.00 |

On the 5th of February, 1864, he made a second partial settlement, in the same court, in which he charged himself with the above balance and other amounts, - $5,354.70

Received credit for payments, - - - - 1,410.58

Leaving a balance of - - - - - $3,944.12

On the 29th day of January, 1866, he made another partial report, charging himself with - - - $5,439.38

And was credited with - - - - 612.26

Leaving - - - - - - - $4,827.12

Of this balance, he paid to the widow of the testator one thousand six hundred and nine dollars and four cents, being one-third of the personal estate, after the payment of the debts of the deceased, and leaving in his hands three thousand two hundred and eighteen dollars and eight cents.

On the 2d day of January, 1873, the executor filed a final report, embracing the balance of the personal estate, and also

the proceeds of the sale of real estate, which he sold on the 21st day of August, 1866, and a small amount for rent, making nine thousand six hundred and fifty-three dollars and eight cents. It is then stated in the report, that by his will the deceased bequeathed to each of his grandchildren, George W. Goodwin, who is the appellant herein, and Wesley R. Goodwin, sons of Richard Goodwin, deceased, a legacy of two thousand dollars each. The report also contains a statement of other legacies given by the will, in all amounting to eight thousand five hundred dollars, and leaving a balance of one thousand one hundred and fifty-three dollars and eight cents. A statement is then made by the executor of his account with each of the legatees.

As to the appellant, this statement is made: "George W. Goodwin, Jr., son of Richard Goodwin, deceased, one of the legatees under the will of said Wesley Goodwin, deceased, was born December 14th, 1842, and was entitled under the will to a legacy to be paid him December 14th, 1865, of two thousand dollars. Prior to January 1st, 1866, the executor paid and advanced to him, in all, from four to five hundred dollars; and about the 1st of January, 1866, he paid him one thousand dollars; and afterward, on the 25th day of July, 1866, he paid said George W. Goodwin, Jr., the residue of said two thousand dollars, who thereupon executed to this executor a final receipt, number 10, for two thousand dollars. The farm was not then sold, and it was not then certain that the assets would be sufficient to pay all of the named legacies, and said George W. Goodwin, Jr., in consideration of the payment of said two thousand dollars in full, executed to said executor a release of all further interest or claim in said estate, which is filed herewith, marked 'A;' wherefore the executor insists that there is nothing due or coming to said George W. Goodwin, Jr."

The voucher marked "A." reads as follows: "In consideration of George W. Goodwin, executor of the last will and testament of Wesley Goodwin, deceased, having this day advanced to me two thousand dollars, a legacy bequeathed to me by said deceased (said executor not being able as yet to

have converted the assets of said decedent into money), I hereby assign, sell, and transfer to said George W. Goodwin all my right, title, claim, and interest in and to said estate, real or personal, if any should be due me over and above said two thousand dollars, in final settlement thereof.

" GEORGE W. GOODWIN, Jr.

" July 25th, 1866."

The report also contains a copy of the seventh clause of the will of the deceased, which is hereinafter set out. It states certain items of expenditure, claiming that the final balance for distribution to the residuary legatees is eight hundred and ninety-nine dollars and thirty-three cents, computing it as of the 30th of December, 1872, and which sum it is claimed should be divided equally between George W. Goodwin, Jr., the appellant, Wesley R. Goodwin, and Mary L. Goodwin, now Scott, children of Rachael Goodwin, deceased, and nine children of George W. Goodwin, the executor, whose names are given, making twelve of them in all, and giving to each one of the residuary legatees seventy-four dollars and eighty-six cents. It is claimed in the report, that this residuary legacy of George W. Goodwin, Jr., the appellant, is covered and conveyed to the executor by the above instrument, marked " A."

The appellant excepted to the report, in eleven particulars or exceptions. The executor demurred to each of the exceptions. The demurrers to the exceptions were all sustained, except those to the first, sixth, ninth, and eleventh, which were overruled. Reply in denial of the first, sixth, and ninth exceptions.

There does not appear to have been any reply to the eleventh exception.

Upon a trial by the court, there was a finding for the executor on all the issues. The appellant moved the court for a new trial, but his motion was overruled.

The record, as amended by agreement, shows certain modifications of the report and the confirmation thereof as amended. There was judgment against the appellant for costs.

Goodwin *v.* Goodwin, Ex'r.

The errors assigned are :

1. That the court erred in sustaining the demurrrers to the second, third, fourth, fifth, seventh, and tenth exceptions. This error is in six different specifications, one as to each of the demurrers.

2. In overruling the motion for a new trial.

No question is made as to the mode of practice used by the parties.

It is probably as well for us to dispose of the questions presented by the assignments of error relating to the sustaining of the demurrers, in the first place. Counsel do not, however, press the questions relating to the demurrers to the third, fifth, seventh, and eighth exceptions.

The second exception is as follows :

" 2. The credit taken by said executor, in the exhibit to the court, February term, 1866, for money paid Jane Goodwin, receipt number 53, amount one thousand six hundred and nine dollars and four cents, was a voluntary payment by the executor, and a gift by him to said widow. She had no claim whatever against said estate, and was not entitled to any portion of the amount so paid her, and the executor then knew that she was not entitled to any part thereof, but paid the same to her for the purpose of defrauding this legatee. Said executor is not entitled to any credit on account of such payment."

The ground assumed against this exception is, that the partial report and settlement, in which the payment to the widow was embraced, was allowed and approved by the court, and that this constituted a legal adjudication of the question, and became, in effect, a judgment of the court, and conclusive upon the appellant, not having been excepted to or appealed from by him.

In our opinion, this position cannot be sustained. It has never been held that such effect can be given to a partial settlement made by an executor or administrator in the course of administration. The statute provides what shall be the force and effect of a final settlement. 2 G. & H. 518, sec. 116. These partial settlements are made without notice

to heirs or legatees. They are *ex parte* in their character, and there is no statute or rule of law, that we are aware of, which gives them the force which is claimed for them. When there was no statute declaring the effect of final settlements, they were regarded as only *prima facie* correct. *Allen* v. *Clark*, 2 Blackf. 343; *Brackenridge* v. *Holland*, 2 Blackf. 377; *Murdock* v. *Holland's Heirs*, 3 Blackf. 114; *Sherry* v. *Sansberry*, 3 Ind. 320.

In *The State* v. *Brutch*, 12 Ind. 381, it was held, that the approval of the report of an administrator, and the allowance of a credit and voucher presented by him, was *prima facie* correct, but not conclusive, when made in the course of administration, and without adversary proceedings.

The various reports of an executor or administrator, in the course of administration, referring to each other as they do, may, in some sense, be regarded as one report; and we think that on a final settlement, while they should be treated as *prima facie* correct, they may still be so far opened up as to correct any frauds or mistakes therein. There is no statute authorizing an appeal from the order or action of the court in allowing or passing a partial settlement of an estate. Nor does the statute declare what shall be the effect of such order or action of the court.

The fourth exception to the report is as follows:

" 4. At the time of the execution of the said will, and at the time of the death of said testator, and for one year thereafter, there were living of the children of Richard Goodwin, deceased, three, and of said George W. Goodwin, this executor, three; that this exceptor is therefore entitled, as one of the three children of said Richard Goodwin, deceased, under the seventh clause of said will, to one-third of one-half of the residue of said estate for distribution, which right the executor denies, and refuses to pay him any part of the residue of the estate."

A rule with reference to a bequest to a class is, that it will include all in existence at the death of the testator, unless it appears from the will that it was intended to have a more

limited application. The rule seems to be more particularly applicable where the class consists of the children of the testator. It is also a general rule that all who are embraced in the class at the time the bequest takes effect will be allowed to take. In such case, it is immaterial whether the persons who are to take are in existence at the death of the testator, or are born into the class after that time, provided they are so born before the time of distribution.

In the case under consideration, after giving certain legacies, which, by the terms of the will, were payable at different times, in consequence of being made payable when the legatees arrived at a certain age, the testator made this disposition of the residue of the estate : " It is my will and desire that what may remain of my estate, after paying off the foregoing legacies and expenses, be equally divided among the children of my sons Richard, deceased, and George W. Goodwin, that may be at the time living."

This language gives rise to two questions :

1. When does the residuary bequest take effect?

2. Who are embraced in the class to whom it is given, and how do they take?

The residuary legatees were not entitled to their legacy until after the legacies mentioned in the former part of the will had been paid, and also the expenses of administration. If, after this, there was any residue, they were entitled then to their legacy. The testator evidently had in his mind a time in the future when the bequest should take effect in possession. Depending upon the ultimate settlement of his estate for its amount, or whether there would be any at all or not, the testator looked to that time as the time when the residuary legacy should take effect in possession. As this final settlement could not take place until the payment of the last of the legacies given in the former part of the will, we are of opinion that the date of the maturity or falling due of the legacy last to be paid is the date at which the residuary legatees were entitled to the residue, and the time to which we must look for the number of persons entitled to share in it.

The language is, to " the children of my sons Richard, deceased, and George W. Goodwin, that may be at the time living." The words, " at the time," refer to a date, which we think means the date at which the last of the legacies became due and payable.

Next, as to the question, who are embraced in the class, and how do they take ? Evidently, the testator did not intend to include as a class all the children of his two sons, for it was only such as " may be at the time living" that are embraced in the class. Therefore, it would seem, that had any that were living at the time of the decease of the testator, or were born afterward, died before the time of distribution, as we have indicated it, the descendants of such would have taken no part of the legacy. They would not have been " at the time living." But how is it as to the children of George W. Goodwin born after the making of the will and after the decease of the testator ? It seems to us that they answer to the description of the class contained in the will. They are children of George W. Goodwin, and they are living at the time when the distribution of the residue is to be made.

A standard author summarizes the rule thus : " Gifts to children apply only to those who correspond with the description at the period of distribution. Therefore, immediate gifts extend only to those who can claim to be beneficiaries at the testator's death. But deferred gifts will be applied in favor of all, or their representatives, who correspond with the description any time after the testator's death and before the period of distribution. * * Immediate gifts to children mean those living at the testator's death. Deferred gifts include all, or their representatives, born before the period of distribution." O'Hara Construction of Wills, 289.

We think it clear, that the children take individually, and not by families. There was no error in sustaining the demurrer to this exception to the report.

We will next consider the sufficiency of the tenth exception to the report. It is as follows :

" 10. Said legatee further says, that from January, 1866, to

and including the 25th day of July, 1866, said executor paid him the sum of one thousand six hundred and sixty-nine dollars, which was and has been ever since December 14th, 1865, due him on his legacy; that he received no other consideration whatever for his receipt and release set out in the final settlement of said executor; and as that amount and more was then due him, he says there is no consideration for said release or sale, and no consideration for said receipt for more than one thousand six hundred and sixty-nine dollars."

We are of the opinion that this exception to the report is valid. The executor can not thus speculate with the means of the estate for his own benefit or for the benefit of others interested in the estate. He stands in a fiduciary relation to the legatees, and can not, considering his dealings to be entirely fair, speculate by purchasing the claim of a legatee or obtaining a release thereof for his own advantage, without full payment. The fact that there was some uncertainty as to the amount which would be realized for the real estate of the deceased, then not yet sold, can make no difference. The result proved that any suggestions made by him as to the insufficiency of the assets to pay the legacies in full were not well founded, to say nothing more of them.

In *Barton* v. *Hassard*, 3 Drury & Warren, 461, a case referred to in Williams on Executors, 1670, note *d*, and a case much in point, the executor, upon a suggestion by him of the insufficiency of the assets, had purchased the legacies of certain of the legatees, and the question was as to the validity of the purchase, and the lord chancellor said:

" It appears that some twenty-three years ago George Hassard, the executor, represented the testator's assets as an insufficient fund to meet the full amount of the debts and legacies; and that some of the legatees sold to him their legacies for sums considerably less in amount. The deed, by which the transaction was carried into effect, was not a release of the estate, but a direct and formal assignment of the legacies in trust for the purchaser. The master has rightly considered, that the executor could not sustain this purchase, which was

clearly made by him in his fiduciary character; but persons, who were legatees, standing in the same interest with the legatees who sold their legacies, desire to have the benefit of the executor's purchase, and insist that they are entitled to treat the assignment as if it had been a release; and the question now is, are they so entitled? As to the case of *Ex parte James,* which was referred to, the contest there was between the general creditors and the solicitor, who had made the purchase, and it stands upon grounds distinct from this case. If a man, who, like this executor, is invested with a fiduciary character, buys up an adverse claim, he at once becomes, in respect of that purchase, a trustee for the parties in whose behalf he is clothed with that character. But this executor's fiduciary character extended to all the legatees. Must I then not remit the legatees, who joined in the deed of assignment, to their former position? This court can not give effect to this deed against those legatees who assigned for the benefit of their co-legatees. There is no principle, upon which these co-legatees, who are no parties to that instrument, can insist on its being upheld for their advantage. The benefit of the purchase must belong to the persons who assigned, subject to the payment of the principal and interest paid by the executor. It is not like the purchase of an outstanding incumbrance at less than its value, which would enure to the benefit of the estate."

In the case under consideration, the transaction assumed the form of a transfer to the executor, without the intervention of a trustee. But this difference can not change the nature of the question or the force of the authority quoted. So far as the instrument executed by the appellant is to be regarded as a receipt, it is subject to the rule that mere receipts may be explained or contradicted by parol evidence.

In our opinion, the purchase of the legacy was void, and the legatee was · entitled to full payment of his legacy, with interest thereon from the time when it should have been paid, if the assets were sufficient to pay it in full.

VOL. XLVIII.—38

We come next to the questions presented by the motion for a new trial. One only of them need be considered. It is this: The executor had paid to Phipps & Co. the amount of a note which they held against the executor himself, and another signed by the deceased, the executor, and one Murphy, and for these payments the executor had been allowed credit in one or more of his 'partial settlements. It was alleged in the first exception to the final report that these debts were, in reality, the debts of the executor, and that the executor knowingly and fraudulently paid the same out of the assets of the estate. Upon the trial of the cause, under the issue formed by a general denial of this exception, the executor was permitted, on his own application and over the objection of the appellant, to testify to the facts concerning the origin of the debts to Phipps & Co., that the same were the debts of the deceased, including statements with reference thereto made to him by the deceased, and that he had paid the debts out of the assets of the estate. The question is, was the executor a competent witness to prove these facts? We see no reason why the executor could not legally testify to the fact of payment by him of the amount in question. That was a matter occurring after the decease of the testator, and did not, we think, fall within either the letter or spirit of the statutory prohibition. The difficult question is, was the executor a competent witness to prove that the debts were the debts of his testator, and thereby to procure the allowance of the amount as a payment by him out of the assets in his hands, and thus discharge a debt for which he was himself liable? Had he paid Phipps & Co. the amount out of his own money, and then presented a claim for the amount against the estate, it is quite clear that he could not, on his own motion, have been a witness in his own behalf to prove the agreement between himself and his father, the testator. In that case, it would have been necessary for him to have filed his claim, making an adversary party, as held in the cases of *Stanford* v. *Stanford*, 42 Ind. 485, and *Hubbard* v. *Hubbard*, 16 Ind. 25. The part of the statute bearing on the question reads as follows:

" That in all suits where an executor, administrator or guardian is a party in a case where a judgment may be rendered either for or against the estate represented by such executor," etc., " neither party shall be allowed to testify as a witness unless required by the opposite party, or by the court trying the cause, except in cases arising upon contracts made with the executors," etc., " of such estate," etc.

It is urged that this statute is not applicable in this case, because no judgment could be rendered for or against the estate represented by the executor. If the statute is to be literally understood, this is true. But this court has not regarded the very letter of the statute in putting a construction upon it. On the contrary, it has rather sought so to construe it as to give effect to the obvious intention of the legislature in its enactment. *Ketcham* v. *Hill*, 42 Ind. 64; *Peacock* v. *Albin*, 39 Ind. 25. The executor had a personal interest in having the claims paid out of the assets of the estate, and thus shielding himself from their payment, and this made his interest to conflict with his duty as the executor, in which capacity he was bound to resist the payment of the claims unless they were justly due from the estate. He did not even require Phipps & Co. to file and establish their claims in the proper court, which a sense of propriety, considering the peculiar character of one of the claims, would seem to have required. It seems to us that it can make no difference that no formal judgment could be rendered against the estate in this proceeding. If the payments shall be allowed, the assets of the estate will be reduced to that extent as certainly as if a judgment had been or could be rendered against the estate. We think the executor should not have been allowed to testify to the facts relating to the origin and nature of the claims, including the agreement between him and his father, the deceased. It is urged that the claims were established by the testimony of Murphy, without the evidence of the executor. We think not, as we read the evidence.

The judgment is reversed, with costs, and the cause remanded, for further proceedings.

## ON PETITION FOR A REHEARING.

DOWNEY, J.—A petition for a rehearing is filed in this case, but it wholly fails to conform to rule 24 of this court. That rule is as follows:

"Rule 24. Rehearing must be applied for by petition in writing, setting forth the causes for which the judgment is supposed to be erroneous. The court will consider the petition without oral argument, unless otherwise directed by the court."

The petition simply "moves and prays the court for a rehearing on each and every question decided against him by the court on the hearing of the above entitled cause; and upon each and every question and matter raised by the record or appearing in the transcript thereof, which may be necessary to a fair and just consideration and decision of those questions so decided against him." The petition does not set forth the errors for which the judgment is supposed to be erroneous, as required by the rule. The office of a petition for a rehearing is not to request the court generally to re-examine all the questions in the record, or all the questions decided against the party filing it; but it is to point out particularly the errors which the court is supposed to have committed in the decision which it has made. On account of this defect in the petition, we can not entertain the application for a rehearing.

The petition is overruled.