## HANCOCK v. HANCOCK, ADMINISTRATOR, ET. AL.

[No. 9,220. Filed February 3, 1916. Rehearing denied April 25, 1916. Transfer denied November 28, 1916.]

1. EXECUTORS AND ADMINISTRATORS.—*Contract with Widow.—Constructive Fraud.—Fiduciary Relations.*—Where an administrator, an heir to the estate, voluntarily assumed the management of the business affairs of decedent's widow, who was aged, in feeble health, uneducated and wholly without business experience, he sustained toward her a fiduciary relation which charged him with acting in the utmost good faith respecting the management of the trust property in his care; and a contract between himself as administrator, and the widow, which she signed, under his persuasion and veiled threats, without proper advice as to the effect of its terms, and by its stipulations surrendered to the administrator, to her injury, her interest in the personalty to be administered in the estate, in which was included certain certificates of deposit which were her personal property, is void as being constructively fraudulent, on the failure of the administrator to show the good faith required of him in his fiduciary capacity. pp. 178, 180, 182.

2. EXECUTORS AND ADMINISTRATORS. — *Contracts. — Construction.—Fiduciary Relations.*—Where an administrator, an heir to the estate, voluntarily assumed the management of the business affairs of, and established his residence with, decedent's widow, who was uneducated, aged and without business experience, he sustained toward her a fiduciary relation which cast upon him the burden of showing good faith and fair dealing in the management of the trust property in his care, particularly where the result of his action enures to his own benefit and to the injury of the party whose interest he should protect, and, unless good faith is shown, any contract entered into by such administrator with decedent's widow concerning her trust property would be unenforcible as constructively fraudulent. p. 179.

3. EXECUTORS AND ADMINISTRATORS.—*Settlement of Family Controversy.—Transfer of Personalty to Estate.—Want of Consideration.*—Where a widow, through the efforts of the administrator, an heir to the estate, surrendered to him certificates of deposit which were her personal property by reason of a gift from her deceased husband during his life, and the administrator applied them to the estate to be administered with decedent's personalty, there was no reasonable ground of disputing the widow's title to such certificates, and, therefore, no real family controversy

concerning them requiring settlement, so that the transfer to the estate was without consideration.    p. 181, 182.

4.  HUSBAND AND WIFE.—*Gifts of Personalty.*—*Delivery by Husband to Wife.*—Where a husband delivered to his wife certificates of deposit and stated at the time that she should care for them as they were her property, he made a complete unconditional gift by delivery which passed title to her.    p. 182.

5.  EXECUTORS AND ADMINISTRATORS.—*Accounting.*—*Technicalities.*— In determining questions arising out of the administration of decedent's estates, courts will not permit an injustice to be sustained upon mere technical questions of practice.    p. 182.

From Howard Circuit Court; *William C. Purdum,* Judge.

Charles E. Hancock, administrator of the estate of William Hancock, deceased, filed a current report and Ollie Hancock filed exceptions thereto. From an approval of the report as filed, the exceptor appeals. *Reversed.*

*Overton & Joyce,* for appellant.

*Bell, Kirkpatrick & Voorhis* and *McClure & Roll,* for appellees.

SHEA, J.—Appellee, as administrator of the estate of William Hancock, deceased, filed an amended current report, to certain items of which appellant filed exceptions as follows: By item No. 1 of amounts chargeable, appellee charges himself with $23,404. Appellant, as the widow of decedent, William Hancock, by her exception to this item, claims that the above amount included two certificates of deposit in her name, amounting to $8,000, which belonged to her. By credits Nos. 1 and 7 of said report, appellee claims to have paid $82 and $66, respectively, for administrator's bonds. Appellant's exceptions question these credits on the ground that, since item No. 1 of amounts chargeable included $8,000 belonging to her, the bonds were too large, and that these credits are therefore excessive. By credit No. 11 appellee claims he has paid appellant, as decedent's widow, all that is her due by reason of a certain contract with him. Appellant by her exception to this item claims that the agreement was without consideration, and is

null and void. Upon the determination of this question depends the disposition to be made of the certificates of deposit aggregating $8,000 as hereinafter set out.

The court approved the report of the administrator as filed, and overruled each of appellant's exceptions thereto, also her motion for a new trial. These rulings are here assigned as error.

In "Exhibit A," attached to the current report, it is averred under oath, by appellee administrator in explanation of item No. 11 and voucher No. 11 for $1,000, that appellant is the second childless wife of decedent William Hancock, and under the law would be entitled to one-third of the personal estate; that all the heirs of William Hancock have attained their majority; that heretofore, following the death of decedent, appellant entered into a contract with the administrator, who was acting for all the heirs, by which she agreed to and did, in pursuance of that contract, make to said heirs deeds to certain property held by virtue of a joint deed between herself and decedent, reserving to herself a life estate therein, and did thereby release her interest in and to the personal estate of decedent; that in consideration thereof the administrator, acting for the heirs of decedent, made a deed to her for life, of certain other real property described in the contract, in which she had no interest, which deed was signed by all the heirs of decedent and acquiesced in by them, and as further consideration of said contract she retained the $500, widow's allowance which had been previously paid to her, receiving in addition thereto the $1,000 represented by item No. 11 and voucher No. 11 of the report, all in full consideration of her one-third interest in and to the personal estate of decedent; that this is the final and only distribution in which appellant will, under the terms of said contract, participate in, and closes her interest in said estate.

In her exceptions to the amended report appellant avers, in substance, among other things, that soon after decedent's

death appellee administrator voluntarily assumed charge of her affairs, paid her taxes and managed her business for her; that soon after he had so assumed charge of her affairs, he asked her to give him the two certificates of deposit representing the $8,000 included in amounts chargeable, as administrator, which she did, without any knowledge that he intended to use them in any manner other than for her use and benefit; that she had great confidence in his honesty and business ability, and that she was without any business experience whatever, and for these reasons permitted him to take charge of and manage all her property and business affairs, and trusted him to manage and protect all her property and interests of every kind and character; that when she delivered the certificates to him, she believed that he intended to put them in a place of safety for her; that after obtaining possession of them, he inventoried them as a part of the estate, and that said amount rightfully belongs to her.

In connection with "Exhibit A" of appellee's amended report she avers that on or about July 31, 1913, appellee asked and persuaded her to sign a certain instrument of writing, which she has since learned contains an agreement that in consideration of certain services which he voluntarily performed for her in the care and management of her affairs, and for the further consideration of $1,000, she agreed to and by said contract did release, transfer and assign to him, as administrator of the estate, all her right, interest and title to all of the personal property described and set out in the inventory of the estate; that for the purpose of inducing her to sign said pretended contract he fraudulently concealed from her that it contained said agreement, or any agreement unfavorable to her interest; that at said time she could not see to read; that she was without business experience and did not know or understand the contents of the pretended agreement, and did not know or understand what it contained; that appellee did not, nor did he have anyone else, read said pretended agree-

ment to her; that he represented to her that said pretended agreement was for her benefit, and advised and requested her to sign it; that she trusted and believed him, and said agreement was without any consideration.

The material parts of the agreement in question, are as follows:

"This agreement entered into this 31st day of July, by and between Ollie Hancock, Widow of William Hancock, party of the first part, and Charles E. Hancock administrator of the estate of William Hancock, deceased, party of the second part, Witnesseth: That,

Whereas, the first party has no child, or father or mother surviving and—

Whereas, all of the real estate which she owns was acquired through her marriage with said William Hancock, deceased, or by conveyance from the heirs of said William Hancock, deceased, and—

Whereas, said Charles E. Hancock, as such Administrator and in his individual capacity, cares for the property of the first party, collects the rents and causes the necessary repairs to be made, taxes paid, etc., on such properties; and—

Whereas, said Charles E. Hancock proposes, without charge on his part to superintend the construction of a dwelling house for first party on real estate in the City of Kokomo, Indiana; and—

Whereas, first party has received from second party her Five Hundred ($500) Dollars allowance as widow under the Statute of Indiana; and—

Whereas, upon the reasons and considerations herein set out first party desires that said administrator, for and on behalf of said estate, shall receive her one-third (1/3) interest in all the personalty of said estate described in the inventory heretofore made and filed by second party,

Now, therefore, in consideration of the services heretofore rendered and hereafter to be rendered for first party by second party in his administrative and individual capacity, and in further consideration of One Thousand Dollars, $1000.00, the payment of which is hereby acknowledged, the first party hereby releases, relinquishes, transfers, assigns and sets over to the second party all her right, interest and title to all of the

personal property described and set out in such inventory. Said second party to use the same in the administration of said estate and for distribution among the heirs of said William Hancock, deceased, it being understood and agreed between the parties hereto that first party, as such widow, releases and relinquishes all her right to the personal property of said estate as far as the same is set forth in such inventory.

A further consideration for the execution of this release, being that first party has heretofore received from second party, in addition to said Five Hundred ($500) Dollars, without compensation, the household goods, one (1) cow, chickens and all personal property of said estate not set out in the inventory.

Witness the hands and seals of the parties hereto.

Ollie Hancock

Chas. E. Hancock, Administrator of estate of William Hancock, deceased.

Witness Lex J. Kirkpatrick.''

The evidence discloses that appellant was the childless second wife of William Hancock and that they had lived together for a period of thirty years; that by a former marriage decedent had six children, who were living; that prior to his death William Hancock had been in the habit of depositing money in the banks of the city of Kokomo, taking time certificates in the name of his wife, which he from time to time cashed or drew out, signing his own name together with that of his wife; that immediately prior to his death he had, in addition to other amounts, two certificates, for $7,000 and $1,000, respectively, which were in the name of his wife. These he delivered to his wife unconditionally, saying that she should take care of them, as they belonged to her. These certificates were put away by appellant. After her husband's death, Charles E. Hancock, her step-son and the oldest son of decedent, appellee in this case, was appointed administrator upon the statement, in his verified petition to be appointed such administrator, that appellant who was entitled to administer the estate if she so desired, was "an old and enfeebled woman." The evidence also shows without contradiction

that immediately he took up his residence with appellant and assumed the management of her business affairs, paying taxes, etc.; that she was uneducated and wholly without business experience; that the business of the settlement of the estate was discussed frequently between appellant and administrator. The evidence discloses that efforts of the administrator were frequent and persistent that she should turn over the property, including the two certificates, to him, to be administered as part of the assets of the estate; that as a result of the negotiations the written contract, which she signed in the presence of Judge Kirkpatrick, the substance of which is herein set out, resulted.

It is argued on behalf of appellant that the contract is void; that Charles E. Hancock sustained toward appellant a relation of trust and confidence. He likewise sustained toward her a fiduciary relation, which casts upon appellee the burden of showing good faith and fair dealing. Under such circumstances the contract will receive the closest examination. *Whitesell* v. *Strickler* (1906), 167 Ind. 602, 611, 78 N. E. 845, 119 Am. St. 524; *McCord* v. *Bright* (1909), 44 Ind. App. 275, 87 N. E. 654; *Goodwin* v. *Goodwin* (1874), 48 Ind. 584; *Lindley* v. *Kemp* (1906), 38 Ind. App. 355, 76 N. E. 798; *Mors* v. *Peterson* (1914), 261 Ill. 532, 104 N. E. 216; *Beach* v. *Wilton* (1910), 224 Ill. 413, 91 N. E. 492; *Huffman* v. *Huffman* (1905), 35 Ind. App. 643, 73 N. E. 1096; *Copeland* v. *Bruning* (1909), 44 Ind. App. 405, 87 N. E. 1000, 88 N. E. 877. This trust relation charged upon appellee administrator the utmost good faith respecting all conduct in the management of the trust property in his care. Especially is this true when the result of his action enures to his own benefit and to the injury of the party whose interest he should protect. This is fundamental in law and morals, and therefore the authorities upon this proposition are uniform. He could not enter into an enforcible contract with appellant concerning her trust property, unless good faith is shown, as

it amounts to constructive fraud, and gives appellant, who was injured by such breach of duty, a right to the relief sought. *Teegarden* v. *Ristine* (1914), 57 Ind. App. 158, 163, 106 N. E. 641; *McCord* v. *Bright, supra; Huffman* v. *Huffman, supra; Ikerd* v. *Beavers* (1886), 106 Ind. 483, 7 N. E. 326; *Yount* v. *Yount* (1896), 144 Ind. 133, 43 N. E. 136; *Whitesell* v. *Strickler, supra; Goodwin* v. *Goodwin, supra.*

It is argued that the contract was fully explained to her by Judge Kirkpatrick, who accompanied administrator to the home of appellant on the morning of the execution thereof. The evidence discloses clearly that appellant was not satisfied with the contract when it was read to her, and that she refused to sign it; that Judge Kirkpatrick very frankly stated to her that he was the attorney for the estate, and for the heirs, and could not advise her as to what she should do. He did state to her what she was entitled to under the law, and that she would receive less under the terms of the contract, and advised her to secure the advice of her own attorney, after which statement he left the house, stating that he came over for the purpose of having the contract signed, which he had already prepared upon information given him by the administrator, believing it was entirely satisfactory; that he sat in appellee Charles E. Hancock's automobile near the house for some time, during which time, the evidence discloses, that appellee administrator, by persuasion and veiled threats, stating that if she did not sign it at that time she could not sign it at all, and by changing the consideration from one dollar to $1,000, induced appellant to sign the contract. He then informed Judge Kirkpatrick that appellant was ready to sign the contract. This was about twelve o'clock in the morning. Judge Kirkpatrick then returned to the house, and the contract was signed, resulting in a loss to appellant of several thousand dollars. It must be borne in mind in this connection that appellant had, during

the early part of the day, asked to have an interview with her attorney, Mr. Joyce; that appellee administrator heard a neighbor inform appellant that Mr. Joyce could not come to see her until two o'clock in the afternoon. In response to this information appellee administrator said to her, "What has old John Joyce to do with this?"—thus showing annoyance and displeasure because appellant had sought the advice of an attorney. The whole attitude of the administrator, as shown by this evidence, discloses great anxiety to have this contract executed without giving appellant an opportunity to consult her own lawyer, although she was advised to do so by Judge Kirkpatrick. There was undue haste, under the undisputed facts shown, if not actual coercion by the administrator at a time when he stood in very intimate business and social relationship with appellant.

It must be remembered that this is not an action to rescind a contract, where the question of return of consideration is involved; neither is it an action of damages for the breach of a contract; but it is an action based upon exceptions to a report, where it is alleged that the assets of the estate are enhanced by $8,000 represented by the cash value of the two certificates of deposit which belonged to appellant, and the charges for surety company bonds paid by the administrator, which are incidental to the main question. The controlling question presented is, Shall this court give its sanction to the conduct of the administrator in obtaining possession of these certificates from appellant in the manner shown? All other questions presented are incidental thereto.

It is further insisted by appellees that this is a settlement of a family controversy, and should therefore receive favor at the hands of this court. It must be borne in mind, in the first instance, that there was no reasonable ground for dispute as to the rights of the parties with respect to the certificates of deposit amounting to $8,000. Putting aside all claims appellant may have

had to title because they were made out in her name, 4. there was a complete unconditional gift by delivery, as shown by the evidence of Dora Wheatly, a daughter of decedent, which is undisputed; so that the title was in appellant for that reason, if for no other. *Teague* v. *Abbot* (1912), 51 Ind. App. 604, 100 N. E. 27; *Grant Trust, etc., Co.* v. *Tucker* (1911), 49 Ind. App. 345, 96 N. E. 487; *Snyder* v. *Frank* (1912), 53 Ind. App. 301, 101 N. E. 684; *Miller* v. *Neff* (1889), 33 W. Va. 197, 10 S. E. 378, 6 L. R. A. 515; *Doty* v. *Willson* (1872), 47 N. Y. 580. Therefore, there being no real controversy, there was no 3. consideration for the transfer to the estate. *Emery* v. *Royal* (1889), 117 Ind. 299, 20 N. E. 150; *Moon* v. *Martin* (1890), 122 Ind. 211, 23 N. E. 668; *Armijo* v. *Henry* (1907), 14 N. M. 181, 89 Pac. 305, 25 L. R. A. (N. S.) 275. In cases that we have examined where settlements have been upheld because they involved family affairs, and were entered into with a view to promote harmony, there was some real contention as to the rights of the parties, and were sustained for that reason, as the settlement of the dispute was the consideration which passed. No such case is presented by the evidence here.

In determining questions arising out of the administration of decedents' estates, neither the trial court nor this court would be justified in permitting an injustice 5. to be sustained upon mere technical questions of practice. It is the judgment of this court that the 1. conduct of the administrator in this case comes clearly within the rule of constructive fraud, as shown by the authorities cited, and if sustained in this court, would result in injustice to appellant. The facts and circumstances in all essential particulars are undisputed. We need not go into questions presented upon the admission and refusal to admit evidence. The decision of the court is contrary to law.

A new trial is ordered, with instructions to the trial court to sustain the exceptions to the final report of the administrator with respect to the matters herein stated, and for further proceedings consistent with this opinion.   Judgment reversed.

NOTE.—Reported in 111 N. E. 336.   See under (1, 2) 21 Cyc 287, 296;  (4) 21 Cyc 1296.