HANCOCK v. HANCOCK ET AL.
[No. 10,576.   Filed October 6, 1921.]

1. APPEAL.—*Review.*—*Harmless Error.*—*Sustaining Demurrer to Paragraph of Complaint.*—Error, if any, in sustaining a demurrer to a paragraph of complaint was harmless where the facts alleged therein were provable under another paragraph. p. 354.

2. DEEDS.—*Cancellation.*—*Fraud and Undue Influence.*—*Evidence.*—*Sufficiency.*—In a widow's action to set aside a deed to children of her husband by a prior marriage, the deed having been executed in consideration of conveyance to her by such children of a life estate in two-thirds interest in land and in which she already owned a life estate in an undivided one-third interest, evidence *held* insufficient to show that the deed involved was obtained by fraud and undue influence. p. 359.

3. JUDGMENT.—*Judgment sustaining Exceptions to Administrator's Report.*—*Conclusiveness.*—In a widow's action to cancel a deed to children of her husband by a former marriage on the ground of fraud and undue influence, a judgment in a prior action sustaining the widow's exceptions to the report of one of the children as administrator holding that a contract relative to the distribution of personal property was fraudulent *held* not conclusive as to the validity of the deed, though the deed was obtained in the same transaction in which the contract was executed; the parties to the contract and those to the deed being different, and the consideration for the execution of the contract and the consideration of the deed being different. p. 359.

From Howard Circuit Court; *Charles A. Cole,* Special Judge.

Action by Ollie Hancock against Charles E. Hancock and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*John B. Joyce* and *Barnabas C. Moon,* for appellant.

*Lloyd McClure* and *Bell, Kirkpatrick and Purdum,* for appellees.

MCMAHAN, J.—Complaint by appellant in two paragraphs against appellees Charles E. Hancock, Owen A. Hancock, Kate Wolford, Lizzie Patterson, Dora Wheatley, Marion L. Hancock, and their respective consorts. The first paragraph alleges that appellant was the childless second wife and surviving widow of William

Hancock who died in November, 1912; that the above named appellees who will hereafter be designated as the appellees are the only living children of William Hancock by a former marriage; that on and prior to July 31, 1913, she as surviving wife was the owner in her own right of certain real estate, she and her husband having been owners thereof in his life time as tenants by entireties; that she was also the owner of a life estate in an undivided one-third of another described tract; that on July 31, 1913, the real estate first described, subject to a life estate in her favor, was of the value of $10,000 and the undivided two-thirds of the last described tract of real estate for the term of her natural life was of the value of not more than $500; that she was married to William Hancock in 1884, and lived with him as his wife continuously thereafter until his death, during which time appellees were frequently at the home of appellant and her husband and spent much time there; that the relations between appellant and appellees and each of them were always pleasant and that she always had great confidence in appellees and trusted them implicitly and that they and each of them had a great and controlling influence over her and her actions; that immediately after the death of her husband, appellee Charles, for the purpose of winning the greatest confidence and gaining complete control over appellant, with his family moved into the house with appellant where they lived as a family until July 31, 1913; that within a few days after the death of her husband appellee Charles persuaded appellant to and she did relinquish her right to administer on the estate of her husband, in favor of Charles who immediately procured himself to be appointed administrator of said estate; that after so moving into the house with appellant, Charles administered to and looked after and managed all the business affairs of appellant, took

charge of all her property and money, looked after making all purchases for her and paying all her bills which she permitted for the reason that she had unbounded confidence in him, all of which he knew; that by reason of the facts, Charles obtained and had the complete confidence of appellant and had a controlling influence over her to such an extent that she did as he requested; that Charles did the above enumerated acts for the purpose of gaining a controlling influence over appellant and procuring her to execute the deed hereinafter described to appellees thus defrauding her out of said real estate; that appellees and each of them knew of said purpose and conferred with Charles and assisted and abetted him therein; that appellant was ignorant and wholly without experience in business affairs, had no knowledge of real estate values, and depended entirely upon her husband during his lifetime and afterwards upon Charles particularly to look after her business affairs; that said Charles acting for himself and said brothers and sisters commanded appellant to execute the deed hereinafter described and falsely and fraudulently represented to her that such would be a proper transaction for her, the right thing for her to do, and would give her more than enough to live on, and that she ought to execute said deed, all of which he did for the purpose of defrauding her out of said real estate; that she relied upon said representations; that by reason of his position as administrator he fraudulently persuaded and induced her to execute to him and the other children a deed for the described tract of land subject to a life estate therein in favor of appellant for the consideration therein named of one dollar and other considerations; that there was no money paid to her for said deed, the only consideration for said deed being a deed executed by appellees to appellant giving to her

a life estate in the undivided two-thirds of the tract of land in which she theretofore owned a life estate in an undivided one-third thereof; that the value of the property so conveyed to her was not more than $500, was inadequate, and out of proportion to the value of the real estate which she conveyed to appellees, which each of them well knew and which appellant at that time did not know; that at the time she signed the first described deed she did not know or comprehend the nature of the transaction but was induced to execute said deed wholly in obedience to the commands of Charles and not of her own free will; that said appellees and each of them connived together and procured her to execute said deed for the purpose of getting possession of said real estate; that she has rescinded said deed from her to appellees and has executed a deed reconveying to them the undivided two-thirds of the real estate described in the deed from them to her, which deed she has tendered appellees. The prayer is that the deed from appellant to appellees be adjudged fraudulent, and be canceled. The second paragraph is in substance the same as the first, the material difference being that it is more specific. A demurrer was sustained to the first paragraph, and overruled as to the second. From a judgment against appellant she appeals and assigns as error the action of the court in sustaining the demurrer to the first paragraph of complaint and in overruling her motion for a new trial.

All the facts alleged in the first paragraph were provable under the second paragraph. The action of the court in sustaining a demurrer to the first para-

1. graph, even though erroneous, would not therefore be reversible error. The specifications in the motion for a new trial are that the decision of the court is not sustained by sufficient evidence, is contrary to law and error in excluding certain evidence.

The contention of appellant is that the evidence conclusively shows a fiduciary and confidential relation existed between appellant and appellee Charles, and therefore the transaction between such appellant and appellees is presumed to be the result of such confidential relationship, fraud and undue influence of the person who occupies the position of trust and confidence, that the one who occupies the position of trust and confidence has the burden of proving that the transaction was fully understood and appreciated by the other party and was free from influence due to the relation, was fair, equitable and just between the parties, or was beneficial to the party who reposed confidence in the other.

The evidence in this case is quite lengthy, and without conflict shows that appellant and William Hancock were married in 1884, and lived together as husband and wife until the latter's death November 3, 1912. William Hancock at the time of his marriage to appellant was a widower and the father of appellees, they being his children by a former marriage. All of said children except Charles were living at home with their father at the time of said marriage and continued thereafter to live with him and appellant until each of them married. When appellant married William Hancock he was the owner of considerable farm land, while appellant owned no property of any kind. No children were ever born to appellant. Her father and mother died before the death of her husband. She had a sister and other relatives although the evidence does not disclose who they were or what relation they bore to her. About five years after appellant and William Hancock were married, he sold his farm and purchased property in the city of Kokomo where he lived at the time of his death. He purchased several other tracts of real estate in Kokomo. The deeds conveying three of said

tracts of land were made to appellant and her husband as tenants by entireties, while the title to the other two tracts was in the name of William Hancock. The value of the properties held by entireties was about $22,000 and the value of the other two tracts was about $4,000. At the time of his death Mr. Hancock owned personal property of the value of about $25,000, including the two certificates of deposit hereinafter mentioned amounting to $8,000 and which was by the opinion of this court in *Hancock* v. *Hancock* (1916), 63 Ind. App. 173, 111 N. E. 336, held to be the property of appellant. Appellant and her husband never had any trouble. Neither was there any trouble between appellant and appellees, until a year or more after the death of William Hancock. Appellant and her husband were living alone when the latter died. The children at that time were all married and had homes of their own, some of them at that time residing in this state, and some out of the state. Charles at that time was in California, and on being informed of his father's serious illness came back but did not arrive until after his father's death. Appellant relinquished her right to letters of administration and appellee Charles was appointed administrator. When making the inventory of the personal property and after he had listed all the property of which he had any knowledge, he asked appellant if she knew of any other personal property. She replied that she did not, except some certificates of deposit which were made out to her. There were three of these certificates, one for $7,000, one for $1,000, and one for about $50. Appellant in testifying as to what took place at this time said: "He (Charles) did not say anything to her about the property or money when he was making the inventory. He did ask if his father had Government Bonds. He asked if she knew all her husband had, or any more he had, and she said nothing but eight thou-

sand dollars he gave her." This was all of her testimony relative to these certificates of deposit or how they came to be inventoried as a part of the estate. Charles, testifying in relation to what took place on this occasion, testified as follows: "She (appellant) said that there were some certificates of deposit in her name. She never said they were given to her and I said do you think they ought to be inventoried to the estate? She said, 'No, they are in my name.'" He said to her that she knew the reason why they were in her name. He knew why they were in her name. His father had been carrying money in that way for a number of years. He made a statement that what money he carried in his wife's name he did not have to pay taxes on. She then said if he thought that was all right, they should be inventoried. He told her if he inventoried them she would have to endorse them. She said all right and she did. He inventoried them with the estate.

The undisputed evidence then shows that the two certificates amounting to $8,000 were endorsed by appellant and included in the inventory which was filed within two weeks after Mr. Hancock's death. Appellant desired that Charles and his wife should come back from California and stay with her, and at her request he sent for his wife who in January following returned from California, after which Charles and his wife continued to live in the house with appellant until October, 1913. Within a short time after the death of her husband, appellant learned how the title to all the real estate stood. Charles also learned about the title to this property and that upon the death of his father appellant became the owner of the real estate where the title had been held by entireties and the owner of a life estate in one-third of the balance. He told appellant what he had learned about the title and that in case she died the whole of the property where the

title had been held by entireties would go to her rela-
tives and all pass out of his father's family. Appellant
at different times and on numerous occasions talked this
matter over with all the children, and said she did not
want it to go that way, that she wanted it fixed so that
when she was through with it, it would go to appellees.
Without going into the details of the evidence as to
these conversations and what was said by appellant, it
is sufficient to say that all six of the children testified
as to having had conversations with appellant wherein
she made such statements. Mrs. Charles Hancock
testified to numerous conversations while she and her
husband were living with appellant wherein appellant
made the same statements. She also testified she was
not at home July 31, when the deeds were made, that
she came home a day or two after they were made, that
on the day she came home appellant told her they had
their business fixed, that she was glad it was done, that
one reason why she wanted it to go to the children was
that her people had never done anything for her, that
her husband did not like any of her people whom he
knew, and that they had never visited or treated her
like a sister.

Judge Kirkpatrick testified concerning the execution
of the contract and the signing of the deed by appellant
as follows: "She (appellant) did not say a word or
make any objections on account of the real estate con-
tracts not being reduced to writing at that time. She
said in answer to Charley's question there that she
wanted the real estate for life and when she died to go
to the children." None of the children other than
Charles knew anything about the execution of the deeds
or of the conversations and negotiations between ap-
pellant and Charles relative to their execution until they
received a letter from him enclosing the deeds for them
to sign and acknowledge, and asking them to sign and

acknowledge the deeds if they were satisfied. Appellant testified to certain threats which she says Charles made to her and influences exerted by him in order to induce her to sign the contract relative to the personal property and deeds. Charles denied all of her testimony on the subject of threats, fraud and undue influence.

The trial court found against appellant on the issue of fraud and undue influence. Indeed we do not see how under the evidence these issues could have 2. been found otherwise. The decision of the court is sustained by the overwhelming weight of the evidence.

Appellant next contends that the judgment sustaining her exceptions to the report of the administrator, and holding that the contract relative to the distribution of the personal property is controlling on this appeal; that the contract relative to the personal property and the deed constitutes one transaction which must stand or fall as a whole, and, the contract having been held fraudulent, we must of necessity hold the deed in question to be fraudulent. This contention cannot be upheld. The transaction relating to the distribution of the personal property on final settlement of the estate is entirely separate and distinct from the execution of the deed in question. The parties to the contract are not the same as the parties to the deed. The subject-matters of the two transactions are different. The consideration for the execution of the contract and the consideration for the deed are different. The evidence in the instant case is materially different from that given in *Hancock* v. *Hancock, supra,* involving the validity of the contract relating to the distribution of the personal property. We fully approve the action of the court in that case, but we hold that case is not controlling in so far as the questions

now before us are concerned.   In that case a fiduciary
relation was shown to exist between appellant and
Charles as administrator of the estate of William Han-
cock.   As said by the court in the opinion in that case:
"It must be remembered that this is not an action to
rescind a contract, where the question of return of con-
sideration is involved; neither is it an action of damages
for the breach of a contract; but it is an action based
upon exceptions to a report, where it is alleged that
the assets of the estate are enhanced by $8,000 repre-
sented by the cash value of the two certificates of de-
posit which belonged to appellant, and the charges for
surety company bonds paid by the administrator, which
are incidental to the main question.   The controlling
question presented is, Shall this court give its sanction
to the conduct of the administrator in obtaining pos-
session of these certificates from appellant in the man-
ner shown?"   And after stating that the title to the
certificates according to the undisputed evidence was in
appellant, the court said:   "Therefore, there being no
real controversy, there was no consideration for the
transfer to the estate."   No such confidential and
fiduciary relations are shown to exist in the instant case
as to justify us in holding that the decision of the court
is contrary to law.

Appellant also insists that the court erred in refus-
ing to permit her to introduce in evidence a certified
copy of the opinion and judgment of the court in *Han-
cock* v. *Hancock, supra*.   She contends that the judg-
ment in that case is controlling in this appeal, and the
contract as to the personal property having been held
void, the deed in controversy must also be held void.
As heretofore indicated the parties to that action and
the present are not the same, the subject-matters are
not the same.   The execution of the contract in rela-
tion to the personal property and making of the deed

are separate and independent transactions. There was therefore no error in refusing to admit the copy of the opinion and judgment in evidence.

Judgment affirmed.