# ALLAN v. GILLET, Ex'r.[1]

(*Circuit Court, W. D. Louisiana.* March Term, 1884.)

FRAUD—EXECUTOR—PURCHASE OF MORTGAGED PROPERTY—RESULTING TRUST.

An executor who negotiates a mortgage upon part of his decedent's estate, to provide funds for a child and devisee of such decedent, cannot afterwards purchase the mortgage land under foreclosure proceedings and hold it for himself. The quality of his estate therein will be a resulting trust for the benefit of the child for whom the mortgage was made.

Demurrer.

*Brady & Ring*, for complainant.

*Ballenger, Mott & Terry*, for defendant.

BOARMAN, J. The bill shows that Mrs. F. B. Allan, widow, a citizen of Kentucky, is a devisee under the will of James Morgan, who died in Texas in A. D. 1866, leaving an estate consisting almost entirely of many thousand acres of wild lands lying in various parts of the state; that Gillet, whom complainant now sues, though appointed, jointly with G. A. Ball, executor, took charge of, and alone administered, Morgan's succession. She complains that, being in necessitous circumstances, she repeatedly demanded of him her one-seventh interest in said estate; but that he, by unlawful, wrongful, and unnecessary delays in the management and settlement of the succession, made it impracticable for her to secure her said interest, or to make it available for the maintenance of herself and children; that, being denied by him any relief for seven years, she and her husband, who could not or did not contribute anything to her support, entreated and requested defendant to let her have her portion, or some part of it, or to arrange for her in some way so as to make the same available for her relief; that he refused then to sell the property, or any part of it, though under the will and law he had full power to sell the lands without any order or process of the court; but that, instead of selling the lands, he suggested that she and her husband could obtain money by mortgaging her said interest, then under his administration, and offered his assistance to negotiate a loan for her; that, acting under his suggestions and promises, she executed her note, with a mortgage on her said interest, payable six months after date, 1872, for $1,200, which he had discounted for her; that when he suggested the mortgaging of her property, and offered to secure the loan, he knew her condition, her poverty, and her inability to pay the note at maturity, unless he made her interest in the succession, then in his hands as executor, available for that purpose, as he promised to do; that, believing that he would not allow a foreclosure of the mortgage, she gave the said note, which otherwise she would not have done; that she believed in and relied on his promises and

[1] We are indebted to Talbot Stillman, Esq., of the Monroe, Louisiana, bar, for this opinion.

intention to protect her interest until a short while after the negotiation of the note, when he informed her, unless she or husband paid the note at maturity, her interest would be sold under the mortgage.

Complainant further alleges that at the time the note became due the said executor had in his hands the proceeds of a sale or sales of a part of the lands made by him under the provisions of the will; that until he was forced by law, in 1877, he never made any showing or account to any one; that at the time of the sale he was the only person, likely, who knew the location or value of the lands, and that he never gave her any information as to their location or value; that in withholding this information he had, took, and exercised an undue advantage over her, and all other persons interested in the sale or purchase of the interest sold, which, she alleges, was bid in by him for much less than it was worth; that he should be held in equity to have purchased, not for himself, but for her; that she has in vain endeavored to exercise her lawful right of redeeming the same, and she now prays for equitable relief.

This statement of her complaint is a summary of the bill to which the demurrer is filed. There are other allegations which seem to be only illustrative of her demand for relief.

In considering the case presented in this summary, it appears, at the time of the sale, there had been no partition or settlement of any kind of the succession, and the title to all the property, except to that which may have been sold, remained just where it was at Morgan's death; that Gillet held the lands in indivision, for all persons interested, just as they came into his hands. Under this statement, did Gillet, as the executor, occupy such a relation to the particular property sold under the mortgage, or to the complainant, as to forbid him now to hold the interest of complainant?

In *Michoud* v. *Girod*, 4 How. 552, it was held that a purchase by an executor of the property of the testator is fraudulent and void, though the sale was at public auction, judicially ordered, and a fair price was paid; that a purchase by a trustee of a particular property of which he has the sale, or in which he represents another, or which he holds in a fiduciary way for another, carries fraud on the face of it; and Justice SWAYNE quotes with an emphatic approval the following rule in equity from Sir EDWARD SUGDEN's chapter on "Purchases by Trustees, Agents," etc.:

"It may be laid down as a general proposition that trustees, * * * agents, commissioners of bankrupts, assignees of bankrupts, solicitors to the commission, auctioneers, creditors who have been consulted as to the mode of sale, *or any persons who, by their connection with any other person, or by being employed or concerned in his affairs, have acquired a knowledge of his property, are incapable of purchasing such property themselves.* * * * For if such persons having a confidential character were permitted to avail themselves of any knowledge acquired in that capacity, they might be induced to conceal their information, and not to exercise it for the persons relying on their integrity. The characters are inconsistent."

This rule in equity is not denied by defendant's counsel. They contend that the thing sold was not the testator's property; that it was only a right to a part of an estate, and it was sold at no instance of Gillet's, but for a debt incurred of her own choice and will; that he occupied no relations to her, or to the property sold, that forbade him to purchase it for himself; that he was not her guardian to protect her against improvident acts. Does this rule, declaring, as it admittedly does, that trustees, agents, and all persons holding confidential relations to another are included in that part of the rule italicized, apply to Gillet? The thing upon which the loan negotiated by him was secured, was a seventh part of the many thousand acres of land which he, at the time of the mortgage and sale, held for the testator's representatives, and of which he had, in consequence of his being the sole manager and administrator of Morgan's estate for many years, acquired a knowledge of the location and value of the lands which, likely, no one else could have possessed, and which, it would seem, he should not in fair dealing, under all the circumstances shown in the bill, have used, except for the benefit of all persons with whom he (as executor or otherwise) occupied any special or general fiduciary relations. It is not at all clear to me that the force of the rule invoked in this case can be broken or lessened, because, as is suggested, the sale at which he purchased the particular property was made to satisfy a debt against the property which she had incurred, instead of being made to satisfy a debt against the succession; for the fact that she, instead of the testator, incurred the debt, did not take the thing sold out of the executor's hands; nor did the fact that she mortgaged her interest in the succession sever their relations, or make the particular property sold the property of a stranger or third person, so far as Gillet was concerned.

It is further suggested in the argument that there was nothing to prohibit the executor from purchasing the interest of Mrs. Allen, she being *sui juris*, for himself; and as the sale was made by or for herself, to satisfy a creditor of hers, there is nothing in the rule to forbid the purchase Gillet made. That he could have purchased from her her part of the succession is true; but it has been uniformly held that where a trustee directly or indirectly purchases of his *cestui que trust sui juris*, it must appear that it was deliberately agreed or understood between them that the relation shall be considered as dissolved, and "that there is a clear contract, ascertained to be such after a jealous and scrupulous examination of all the circumstances, and it is clear that the *cestui que trust* intended that the trustee should buy, and there is no fraud, concealment, and no advantage taken by the trustee of information acquired by him as trustee." *Church* v. *Marine Ins. Co.* 1 Mason, 341. As the bill shows just the opposite of these fair conditions, it is not necessary to discuss the suggestion as to the competency of an executor to purchase of the *cestui que trust sui juris*.

It will be observed in this case that the complainant does not rest her demand for equitable relief solely upon the fact that Gillet, in his position as executor, was forbidden to purchase her property for himself, for the bill makes certain charges and complaints in relation to the advice, acts, transactions, and promises of Gillet in managing the estate and in negotiating the loan, which show, aside from his being the executor of the estate, that he was, or may have been, connected with her, and with her said interest, and with the debt for which it was sold, in such a fiduciary or confidential way as to forbid him to purchase for himself. It will be seen that the rule we are considering, and the public policy which its enforcement is intended to conserve, is not limited to prohibiting an executor, trustee, or agent from combining the dual character of vendor and vendee, as Gillet would certainly have done if he had purchased the whole or any part of his testator's property at a sale, judicial or otherwise, made to pay Morgan's debts, or to effect a partition of the lands. To prohibit this combination of inconsistent characters in an agent, is clearly one of the essential purposes of the rule in equity, and of the policy of the law as laid down in *Davoue* v. *Fanning*, 2 Johns. Ch. 252, and in the cases reviewed by the learned judge in his examination of that noted case; but it goes further, and makes it inequitable, under the allegations of complainant's bill, for Gillet, not considering his capacity as executor, to hold the property herein involved otherwise than as a resulting trust for the beneficiary now suing for equitable relief.

Demurrer overruled.