ANDREW IRWIN *et al.*

*v.*

ANDREW SAMPLE.

*Opinion filed December 22, 1904.*

1. EQUITY—*deed acquired by abuse of fiduciary relation will be set aside.* A deed from the grantor to the brothers of his deceased wife, obtained from him by a betrayal of the confidence reposed in them by reason of their intimate business and family relations and at a time when he was in an extremely low mental and physical state, will be set aside in equity.

2. JUDGMENTS AND DECREES—*when it is error to order an administrator to turn over assets.* Where a bill to cancel a deed to the defendants, one of whom is administrator of the estate of complainant's wife, and require them to return the personal property of the wife's estate, does not seek to affect the status of the administrator, it is error, on decreeing cancellation of the deed, to require the personal assets to be turned over to complainant.

WRIT OF ERROR to the Circuit Court of Logan county; the Hon. GEORGE W. PATTON, Judge, presiding.

This was a proceeding in chancery, brought in the circuit court of Logan county, by Andrew Sample, the defendant in error, against Andrew Irwin and other heirs-at-law of Lydia Jane Sample, deceased, plaintiffs in error, to set aside a deed to eighty-five acres of land made by said Andrew Sample to William J. Irwin, Andrew Irwin, Robert Irwin and George C. Irwin, hereinafter, for the sake of brevity, referred to as the four Irwin brothers, and for a partition of said land among the parties hereto; also for the return of certain personal property, aggregating $5000 in value, which was left by Lydia Jane Sample, deceased, and which had been delivered by Andrew Sample to Robert Irwin after the death of Lydia Jane Sample. A decree was entered granting the relief prayed for in the bill, and this writ of error is prosecuted by the defendants below to reverse that decree.

The bill represents that Lydia Jane Sample died on January 22, 1902, intestate, leaving her surviving Andrew Sample, the complainant, her husband, the four Irwin brothers and John Irwin, her brothers, and Lydia Jane Watson, the only daughter of a deceased sister, as her only heirs-at-law; that the four Irwin brothers were all residents of Logan county; that John Irwin and the niece were residents of Ireland; that she left personal property of the value of $6000 and eighty-five acres of land in Logan county; that Lydia Jane Sample, for a number of years prior to her death, was an invalid, and for five years immediately preceding her death required the greater part of complainant's time in caring for her; that by reason thereof his health became affected, and the death of his wife was a severe shock to him mentally and physically, and incapacitated him for some time from intelligently transacting business of any kind; that on the day after his wife's funeral, which occurred on Friday, the Irwin brothers, whose relations with complainant and deceased had been and were of the most cordial and confidential character, came to complainant's residence and represented to him that under the law they owned all the personal property left by deceased, and demanded the same of him, stating that complainant would be protected in all his rights in the property; that he thereupon turned over to them all of said personal property; that on Monday, two days later, William J. Irwin came to complainant's house with a notary public named Houser, and represented that it was necessary to administer upon the estate of his wife, and that the four Irwin brothers under the law had certain rights in the land left by deceased and also in a certain tract of land owned by complainant, and that the interest of the Irwin brothers in complainant's land was equal to the interest of complainant in the real estate left by the deceased; that thereupon William J. Irwin proposed to complainant that the Irwin brothers would quit-claim all their interest in the land owned by complainant if he would quit-claim to them

213—11

all his interest in the real estate left by deceased; that William J. Irwin also represented that an attorney named Foley, who had been the legal adviser of complainant in all his legal business, had instructed him to say to complainant that he, Foley, was attending to complainant's interests in the estate, and that Foley had prepared a paper, which William J. Irwin then submitted to complainant for him to sign, and represented that Foley had sent word that it was necessary for him to execute it in order to secure to him his rights in his wife's property and to settle the estate; that without knowing the contents or legal effect of the document, complainant signed it; that thereafter the Irwin brothers executed and delivered to the recorder of deeds of Logan county a quitclaim deed to complainant for the land already owned by him and had it recorded, after which it was mailed to him by the recorder. The bill further avers that complainant has partially recovered from his mental and physical prostration and has learned that the instrument he signed was a quitclaim deed to the real estate and a release and conveyance of the personal property left by his wife and a relinquishment of his right to administer upon his wife's estate. The bill charges that all the representations made by William J. Irwin were false and untrue and were deliberately made in pursuance of a conspiracy among the Irwin brothers to cheat, defraud and swindle complainant out of his legal rights and interest in his wife's estate, and that the conveyance executed by complainant was without any consideration. The interests of the parties in the real estate left by deceased are set out, and the bill contains a prayer that the conveyance executed by complainant and delivered to the four Irwin brothers be set aside and the land partitioned, and that defendants be ordered to return the personal property to complainant.

Two amendments were made to the bill. The first of these avers that complainant was ignorant of his right to administer upon the estate, and requested Robert Irwin to take charge of the personal property and to consult with

Foley as to what was necessary to be done in the administration of the estate; that Robert Irwin did see Foley, but falsely and fraudulently represented to him that complainant had given to the Irwin brothers his interest in the real and personal property left by deceased and desired to transfer such property to them, and that thereupon Foley prepared the document which complainant signed; that William J. Irwin came to complainant's house and represented that Robert Irwin had consulted with Foley in regard to the administration of the estate and that Foley was acting as the complainant's attorney in the matter and had sent word for complainant to sign the paper, which he did on account of the said representations, being ignorant of his rights in the property.

By the second amendment it is averred that when William J. Irwin came to complainant's house and obtained his signature to the instrument, complainant was taken by surprise, and had no opportunity to advise with friends or counsel with an attorney. It is charged that a confidential and fiduciary relation existed between complainant and the Irwin brothers which was abused in procuring complainant to make the conveyance of his interests in his wife's estate.

All of the defendants joined in an answer specifically denying the material allegations of the bill. The complainant filed a replication to the answer. An answer was filed to the bill, as amended, by the four Irwin brothers alone. The specific averments of the answers aside from the denials, so far as material, are hereinafter set out in the opinion of the court. The cause was referred to the master to take the evidence. Upon the coming in of the master's report, the decree was entered finding the facts substantially as set out in the amended bill.

The material averments of the bill find support in the proof offered by complainant, while the evidence adduced by defendants below tended to show that an eighty-acre tract of land, on which the Samples lived at the time of the death

of the wife, the title to which is in the husband, had been purchased in part with his funds and in part with moneys realized by him from conducting farming operations in his own name upon the farm owned by the wife which is involved in this suit; that she in her lifetime and the four Irwin brothers upon her death claimed an interest in the tract held by the husband; that the wife had exacted from the husband a promise that in the event of her death her property, held in her name, should go to her brothers and niece, provided they released to him their interest in the tract which stood in his name, and that the conveyances mentioned in the bill were made for the purpose of carrying out that arrangement. Andrew Sample denies that any such arrangement was made with him by his wife, and denies that she ever claimed any title or interest in his land.

Plaintiffs in error insist that the decree is against the manifest preponderance of the evidence, and that the court erred in ordering Robert Irwin to turn over to the complainant personal property which he held as administrator.

BLINN & HARRIS, HOBLIT & SMITH, and BEACH, HODNETT & TRAPP, for plaintiffs in error.

BALDWIN & STRINGER, and KING & MILLER, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The evidence warrants the conclusion that the relation between Andrew Sample and the four Irwin brothers was fiduciary in its character at the time of the transaction under investigation in this cause. They were his brothers-in-law and lived in the same neighborhood with him and had been frequently at his home, especially during the long illness of his wife immediately preceding her death. George Irwin lived within a quarter of a mile of Andrew Sample, and had assisted him in the transaction of his business. The

relations between them and him were exceedingly cordial and intimate, and the trust and confidence reposed by him in them was such that he regarded his property or his interests as being entirely safe in their hands. Immediately following his wife's death, he was in a condition of great prostration, both physically and mentally, and while not disqualified to transact business affairs of an ordinary character, was yet, on account of the weakness of his intellect, consequent upon his great exhaustion, unfit to care for his own rights in dealing with persons desirous of furthering their own interests at his expense.

Mrs. Sample died on Wednesday, the 22d day of January, 1902. On the day following, the four brothers were at the Sample home, where there was some discussion among them as to who should administer upon the estate of the deceased. The funeral occurred on Friday, and on that day Andrew Sample requested them to return on Saturday, and at that time it was agreed that Robert Irwin should act as administrator. Sample then delivered to Robert the personal property of the estate, and as the brothers were leaving adjured them to treat him "right in this thing;" and he says they assured him that they would do so, and his testimony in that regard is not denied.

On the succeeding Monday, William J. Irwin came to Sample's home, accompanied by an attorney, Paul Houser, who was also a notary public. William's purpose was to secure Sample's signature to a conveyance which transferred to the four Irwin brothers his interest in the real estate of the deceased, which also recited that he thereby transferred his interest in his wife's personal property to the grantees in the deed, and waived his right to administer her estate. The four Irwin brothers contended that they had some interest in the eighty acres of land which stood in the name of Andrew Sample, and they proposed to quit-claim that to him as a consideration for the execution of the instrument above mentioned which was to be signed by him. Sample had in the

past occasionally employed Stephen A. Foley, an attorney residing at Lincoln, in Logan county, in whom he had great confidence, and he had suggested to Robert that he take Mr. Foley's advice about the manner of administering the estate. According to the testimony of Paul Houser, William J. Irwin secured Sample's signature to this instrument by stating that he had brought it there to be signed according to Mr. Foley's instructions, and that in accordance with its terms, Robert Irwin was to be appointed administrator. Mr. Houser says, however, that he does not remember the exact words that William used. Sample states that Irwin further said to him on that occasion that "Mr. Foley sent out word to me that he was tending to my business and everything would be done right." Mr. Foley testified that he was not acting as Sample's attorney, that he did not send any such message by William J. Irwin, and that he did not send any instruction to Sample in reference to signing the instrument in question. The deed from the four Irwin brothers to Sample had then been signed by three of the grantors named therein, and Sample was assured by William that it would be signed by the remaining grantor. Under these circumstances, relying, as he says, upon the pretended message conveyed to him from Mr. Foley, Sample signed and acknowledged the instrument which had been prepared for his signature. The notary's presence, on that occasion, was secured by William so that Sample's acknowledgment might be taken. Mr. Houser did not know the purpose of the visit until after they were in the house. He testifies that Sample was in a dazed and stupid condition, and that he was not fully satisfied that Sample understood what he was doing when he executed the conveyance.

In our judgment, the evidence warrants the finding that the execution of this instrument was induced by the unfounded claim which the four Irwin brothers set up to the eighty acres of land owned by Andrew Sample, and by the false statements made to him by William J. Irwin in ref-

erence to the message sent by Mr. Foley to Sample. His confidence and trust in these four brothers-in-law and his weakened mentality contributed to make him the victim of their wrongdoing.

The following, from section 947, volume 2, of Pomeroy on Equity Jurisprudence, has several times received the approval of this court: "The term fiduciary or confidential relation, as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused,—in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, does such a relation in fact exist?" Likewise, language from section 956 of the same volume, which reads: "It is settled by an overwhelming weight of authority, that the principle extends to every possible case in which a fiduciary relation exists in fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic or merely personal." (*Roby* v. *Colehour,* 135 Ill. 300; *Thomas* v. *Whitney,* 186 id. 225; *Walker* v. *Shepard,* 210 id. 100.) The court below properly applied this principle to the transaction involved in this proceeding.

We are not unmindful of the testimony of the four Irwin brothers and of the son and daughter of William J. Irwin, that at the time of the meeting at the Sample home on the Saturday after the funeral, Andrew Sample stated that in accordance with the request of his wife, he desired to transfer to her five brothers and her niece, the daughter of the deceased sister, being all her heirs other than himself, the property owned by her and held in her name at the time of her death in exchange for a deed from them conveying to

him all their interest in the eighty acres which had been conveyed to him. We are disposed to the view that this contention is an afterthought on the part of the four Irwin brothers. The original answer of defendants stated that the instrument executed by Andrew Sample was upon a "good and sufficient and valuable and ample consideration for the said acts and conveyances and for each of them; and that said transaction was and is an honest, open and fair business transaction between man and man." This averment is wholly without support in the evidence. On the contrary, there is no basis in the proof for any conclusion that there was any consideration whatever for the conveyance of about $10,000 worth of property by Sample, except the execution of a quit-claim deed to him, which conveyed nothing. On the 21st of December, 1903, after the trial of the cause and on the same day that the final decree was entered, in their answer, filed on that day, to the amended bill, the four Irwin brothers state that the instrument in question "was signed by complainant of his own free will, and understanding the legal effect of said deed, signed the same for the purpose of carrying into effect the previous arrangement and understanding by which he had agreed to carry into effect the request of his wife, and relinquish all right, title and interest in the personal property and real estate held by her to her brothers and niece living in Ireland." This defense had not been theretofore disclosed by answer.

The conveyance which the bill seeks to set aside transferred the property to the four Irwin brothers alone. When they took that deed, had they been attempting to carry out any such arrangement as they testify existed and as they set up by this answer to the amended bill, the instrument taken should have provided in some way for passing one-sixth of this property to John Irwin and a like portion to Lydia Jane Watson, the brother and niece residing in Ireland; so that, in any event, the conveyance taken did not carry out the arrangement which the grantees therein swear it was made

to effectuate, and the instrument which they themselves had prepared and executed indicates that their testimony is untrue and their defense without merit.

If, however, the preponderance of the evidence showed Andrew Sample's purpose to be that stated by these grantees, we think it should be attributed to the unfounded claim set up by them to an interest in the real estate owned by him, and the fact that the same claim may have been made by his wife in her lifetime does not lend it sanctity and does not better their standing in a court of equity. So far as disclosed by this record, it was without merit, whether asserted by her or by them. The most that the evidence tends to prove in this regard is that at one time he owed her for a part of the money invested in his land. There is no contention that she ever owned any interest of any character in the land purchased by him. Under such circumstances, in view of the relations existing between the parties, it is manifest that the conveyance should not stand.

The decree of the court below, however, is erroneous in one respect. Robert Irwin is administrator of the estate of the deceased and is now in possession of the personal property left by her. The decree orders that he surrender to Sample all the personal property received by him belonging to her estate. The bill does not seek to affect his status as administrator. The conveyance made by Andrew Sample was properly canceled and set aside, but it was not proper to direct the administrator to turn over the personal assets to defendant in error. The conveyance being for naught held and esteemed, if Robert Irwin shall continue to act as administrator until the estate is finally closed, it will be his duty at that time to pay and deliver to Andrew Sample, as heir of his deceased wife, all the personal assets of the estate. Should he be removed as such administrator and another appointed in his stead, then these assets should be surrendered to his successor.

The decree of the circuit court, in so far as it directs Robert Irwin to account for and pay over to Andrew Sample the personal assets at this time, is reversed. In all other respects it is affirmed.

The costs of this court will be adjudged, one-half against plaintiffs in error and one-half against defendant in error.

Defendant in error has filed an additional abstract of the record and moves that the expense thereof be taxed as costs. We think the necessity for the additional abstract appears, and the motion will be allowed.

*Decree affirmed in part and reversed in part.*