This suit was instituted to compel an accounting by defendant Mary C. Wood of the profits received by her in the purchase of certain corporate stock bequeathed to her son, John Wood, Jr., and for judgment against her for the sum of $4,000, the amount the legacies bequeathed to plaintiff were discounted by her while she was executrix of the will of John Wood, deceased, and as such a trustee for plaintiffs. John Wood died testate. He left surviving him his widow, defendant Mary C. Wood, who was his second wife; a minor son, John Wood, Jr., who was the son *Page 40 
of his said widow. He also left five daughters by his first wife, all of mature age, to wit: Louise A. Wells, Margaret Schmeer, Gwendolen Nelson, Elizabeth A. Ewing and Ada Weiss. Said Mary C. Wood was confirmed executrix February 13, 1915. She filed her inventory May 1, 1915. Among other property belonging to said deceased and included in the inventory are 95.36 shares of the capital stock of the John Wood Iron Works appraised at $200 per share, which is the par value. The total capital stock of said iron works consists of 100 shares. Indorsed on the inventory is the following statement:
"The foregoing appraisal of the value of the shares of stock of John Wood Iron Works, is based upon the ground, that while the physical assets of the corporation show a present value of something more than $40,000, yet the former head of the concern John Wood, is dead, and the business is run down to such an extent that the corporation not only is not making money at this time, but is run at a loss, and the earning power of the stock at this time is nothing. If the business of the corporation can be built up to something like its former condition, the value of the stock will be more, but in view of the present conditions which prevail in business generally and with regard to this corporation in particular, the appraisers do not believe that the present value of the stock is more than par, namely: $200.00 per share."
This inventory is dated May 1, 1915.
April 9, 1915, a public accountant, after examining the books, reported assets of $76,330.10 and a surplus of $54,167.48. At that time the indebtedness amounted to $2,162.62, making the total value of the 100 shares of stock to be $74,167.48, or a book value of over $740 per share. This total equals the par value of the stock and the surplus. Defendant Mary C. Wood *Page 41 
did not call a meeting of the stockholders of said corporation for a long period of time. Plaintiffs importuned defendant executrix to call said meeting to have a dividend declared in order to pay the legacy of $1,000 to each of plaintiffs, as provided in the will. January 26, 1916, plaintiffs presented a petition to the Circuit Court of Multnomah County, sitting in probate, to require defendant executrix to make a report and to submit the accounts, books and other documents of said corporation for examination. They alleged that said defendant executrix was mismanaging the corporate affairs, would dissipate the funds belonging to the estate and would thereby deprive the plaintiffs of their legacies. Thereupon negotiations were entered into between executrix and plaintiffs looking to an adjustment and settlement of their differences. Defendant executrix controlled at that time over 95 per cent of the capital stock. She continued to operate the iron works and during the year 1915 operated at a loss of about $9,000. At the time of the inventory the cash on hand amounted to over $6,000. This amount had been entirely used and additional funds borrowed to carry on the business. A second attempt was made to make defendant executrix account, which failed. Thereafter, to wit, June 24, 1916, plaintiffs presented their petition to said court requesting the removal of defendant executrix and for the appointment of some disinterested and fair person to execute the will and administer the estate. Further negotiations were entered into by the parties following this last petition. These negotiations resulted in the parties entering into a contract in words and figures as follows:
"This Agreement made and entered into this 28th day of June, 1916, by and between Mary C. Wood, acting as the duly qualified Executrix of the Estate of *Page 42 
John Wood, Deceased, and in her own private capacity, and as Trustee for her minor son, John Wood, Junior, as the first party, and Louise A. Wood, Margaret Schmeer, Gwendolen Nelson, Ada Weiss, and Elizabeth A. Ewing, as second parties:
"Witnesseth: That, Whereas, the said John Wood, by the terms of his will, directed that there should be paid to each of his five daughters the sum of One Thousand Dollars ($1000.00), in cash, said amount to be paid as soon as his Executrix could conveniently pay the same, and he further directed in said Will that there should be paid to each of his said daughters an additional sum of One Thousand Dollars ($1000.00) within two years from and after the date of his demise, or as soon thereafter as his said Executrix could conveniently pay the same; and
"Whereas, the said Will contained this provision: `All of which said sums shall be paid to my said daughters out of the dividends that shall be declared to the shares of stock now owned by me in John Wood Iron Works, a Corporation of Portland, Oregon, which shares of stock I hereinafter dispose of to my beloved wife, Mary C. Wood, and to my son, John Wood, Junior, and I direct that immediately after my demise, or within a reasonable time thereafter, my said wife, Mary C. Wood, under authority of the ownership of the shares of stock hereinafter given her as her own, and by reason of her authority as trustee of the shares of stock hereinafter given to my son, John Wood, Junior, call and hold a legal meeting of the Board of Directors of said Corporation, and declare such dividends as may be deemed advisable, so as to provide for the payment of the above mentioned bequests'; and
"Whereas, the said John Wood died in Multnomah County, State of Oregon, on the 12th day of January, 1915; and his Will was, thereafter, admitted to probate and the said Mary C. Wood appointed as Executrix thereof; and approximately one and one half years have passed since the date of the admission to probate and no payments or attempt to make payments *Page 43 
upon said bequests have been made by said Executrix or said Estate; and a dispute has arisen between the daughters of the said Deceased, the second parties herein, and the Executrix, as to how and when said payments should be made and proceedings have been taken into court to test said question and asking for the removal of said first party herein as Executrix of said Estate, which proceedings are now pending undetermined; and
"Whereas, the said Mary C. Wood, as such Executrix and on behalf of herself and as Trustee for the said minor heir, has proposed that she will procure a loan to be secured by a mortgage upon the assets of the said John Wood Iron Works, a Corporation, with which to discharge and settle the claim and demands of the second parties herein against said Estate, providing said second parties will accept and receive in full of said claim the sum of Six Thousand Dollars ($6000.00) and release said Estate and the said John Wood Iron Works from any and all further liability to them by reason of the terms of said Will, to which proposition the said second parties have agreed;
"Therefore, in consideration of the premises, it is hereby agreed as follows:
"First. That the first party, acting for herself, as Executrix, and as Trustee of the said Minor child, will apply to the Court for permission to procure a loan in the sum of Ten Thousand Dollars ($10,000.00) for such time and upon such terms as may be considered advisable by the Court and by the parties interested, which loan shall be secured by a mortgage upon the plant of the said John Wood Iron Works, a Corporation; that said loan shall not exceed the sum of Ten Thousand Dollars ($10,000.00); that out of said loan when procured, the said first party, with permission of the Court, shall pay over to the second parties, or their attorney, the sum of Six Thousand Dollars ($6,000.00) in cash; and that upon the receipt of said payment, the said second parties shall each and all execute a good and sufficient release, discharge, *Page 44 
or assignment of all of their right, title, claim, interest, or estate in and to the assets and property of the said John Wood, Deceased, and all of their right, title, interest claim or demand, of any kind whatsoever, against the stock, assets, profits, or dividends of the said John Wood Iron Works, a Corporation, which they now have or might, at any time, assert or claim under or in pursuance of the terms of the last Will and Testament of the said John Wood, Deceased, (and all of their rights, title, claim and interests that are contingent and mentioned in paragraph `sixth' of said last Will of John Wood, deceased, or by reason of their relationship with the said John Wood, Deceased).
"Second. That they, each, consent and agree to the procuring of said loan and the authorization thereof by the County Court and that pending such proceedings and the payment of the said amount and the discharge of said interest, the Petition and other proceedings now pending before said Court, having for their object the construction of said Will and the future administration of said Estate, shall remain as they now are and if, said loan is procured and said payments made, then said proceedings shall be dismissed, otherwise to be taken up and prosecuted in accordance with the original purpose for which they were instituted.
"Third. It is further agreed that all due haste shall be used in the procuring of the said loan and the settlement of said account and that the matter shall be closed up and discharged within the period of forty (40) days from this date."
Laches is not an issue in this case.
Decedent bequeathed to his wife, said executrix, 40 per cent of his share of the capital stock in the John Wood Iron Works after bequeathing two shares of said stock to his son-in-law, Edward H. Weiss. He bequeathed the remaining 60 per cent to his son, John Wood, Jr., eleven years of age at the date of *Page 45 
his will, with the proviso that said shares of stock be held and managed for him by his mother, said executrix as trustee, until he reached the age of twenty-one years. Paragraph six of said will prescribes as follows:
"Sixth — If my said son, John Wood, Jr.; should die before he reaches the age of 21 years, and during the life time of his mother, Mary C. Wood, then one-third (1/3) of the said shares of stock in said John Wood Iron Works hereinabove given to my said son, shall go to his mother, Mary C. Wood, and the remaining two-thirds (2/3) of said shares shall be divided equally among my five daughters mentioned in Paragraph `First,' herein."
John Wood, Jr., died June 2, 1922. Thereafter this suit was instituted and on November 7, 1923, the amended complaint upon which the same was tried was filed. REVERSED. REHEARING DENIED.
Much of the argument and many of the authorities cited by plaintiffs appertain to sales made by an administrator, executor or other trustee to himself. Such a sale is absolutely void in this state. If that was the problem presented it would have been easily solved: Or. L., § 1276; Adams v. Kennard, 122 Or. 84
(253 P. 1048); Gilbert v. Branchflower, 114 Or. 508, 516
(231 P. 982); Action v. Lamberson, 102 Or. 472, 488
(202 P. 421, 732). *Page 46 
Executors are trustees of the beneficiaries of the will they are executing: 11 R.C.L. 23, § 6; 23 C.J. 1170, § 387; Woerner, Administration (2 ed.), §§ 383, 500; 2 Story's Equity Jurisprudence (14 ed.), 187, § 800; 1 Lewin on Trusts, § 190;Roach's Estate, 50 Or. 179 (92 P. 118); Stewart v.Baldwin, 86 Wn. 63 (149 P. 662, 664); McCulley v.Rivers, 203 Mich. 417, 427 (170 N.W. 24). In Roach's Estate, above, a distinction is drawn between executors and trustees in the ordinary sense in which that term is used.
This case presents two different capacities in which defendant Wood as executrix acted and of which complaint is made by plaintiffs. These are: First, purchasing from plaintiffs, beneficiaries of the will of which defendant Wood was executrix, their legacies at a large discount. It is contended on behalf of plaintiffs that the estate of defendant's testate was solvent; that the executrix of the will of her testate could not, with the estate solvent, buy up the legacies at a discount; that it is contrary to public policy to permit an executrix thus to speculate in the claims against the estate she is called upon to administer, and to benefit by her purchases from the beneficiaries of the estate. Second, purchase by defendant executrix of the contingent interest of plaintiffs in the shares of the capital stock of John Wood Iron Works which said executrix held as trustee for her son, John Wood, Jr., herself and plaintiffs; that the general rule of law applicable to the purchase by a trustee of property from his cestui que trust is, such dealings are scrutinized with jealous concern by courts of equity; that such purchases must be fairly and openly made after all information possessed by the trustee has been communicated to the cestui que trust, and the trustee is not guilty of any inequitable conduct. *Page 47 
It is against public policy for an executor who is administering a solvent estate to purchase from the heirs of the legatees, at a discount, their interest in the state: Goodwin
v. Goodwin, 48 Ind. 584, 592; Hancock v. Hancock,63 Ind. App. 173 (111 N.E. 336); Markwell v. Gray, 9 Ky. Law Rep. 534; Michoud v. Girod, 4 How. (U.S.) 552 (11 L.Ed. 1076, see, also, Rose's U.S. Notes). An executor is not permitted to make a profit for himself directly or indirectly in the administration of his testate's estate: 1 Perry on Trusts and Trustees, §§ 427, 428; 1 Story's Equity Jurisprudence (14 ed.), 425, 428, § 446;Allen v. Gillet, 21 Fed. 273, 276; St. Paul Trust Co. v.Strong, 85 Minn. 1 (88 N.W. 256); Baker v. Springfield Western Missouri Ry. Co., 86 Mo. 75; Irwin v. Sample,213 Ill. 160, 168, 169 (72 N.E. 687); Luff v. Lord, 34 Beav. 220, 226 (56 Eng. Rep. 619); Colton v. Stanford, 82 Cal. 351
(23 P. 16, 19, 20, 16 Am. St. Rep. 137); Bigelow on Fraud, 315, 318; 11 R.C.L. 365, § 433; Collier v. Collier, 137 Ga. 658
(74 S.E. 275, Ann. Cas. 1913A, 1110, and extensive notes following); Mills v. Mills, 57 Fed. 873, 63 Fed. 511;Cardoner v. Day, 253 Fed. 572, 576. It will be noticed that in practically all the cases and texts cited sustaining the purchase from a beneficiary of the will by the executor that this contention is always attached to the approval, viz., that the contract must be fair on the part of the executor and no advantage taken by him of his position as executor. Applying that rule, which seems to be universal, to the instant case, we are of the opinion that the purchase of the legacies owing to the plaintiffs by the defendant executrix was contrary to public policy and is void.
Here is the situation as we see it: The defendant executrix was directed by the will to call a stockholders' *Page 48 
meeting immediately after the death of the testate for the purpose of declaring a dividend to pay to each of the daughters of the decedent the sum of $1,000. At that time there was in the possession of the executrix more than $5,000 in cash, an amount sufficient to pay the sum bequeathed. Instead of obeying the mandates of the will defendant conducted the business of the iron works for more than a year at a loss, according to her own testimony. Even before a year had expired she was borrowing money for the purpose of operating said iron works. She made no attempt to pay the legacies which she was directed to pay as soon as convenient after her testate's death. It is true that some discretion was left to the executrix, but this was not an arbitrary discretion. The language and spirit of the will clearly indicates that it was the testator's intention that $1,000 be paid to each of his daughters very soon after he had passed on. The executrix herself testified that she did not pay these legacies because it was not good business for her to do so. In refusing to obey the directions of the will she did so in her own interest exclusively. Courts of equity are chiefly concerned in supervising the relations between a trustee and the cestui quetrust to prevent the trustee from serving his own interest at the sacrifice of the interest of his cestui que trust.
Defendant, according to her own testimony and the testimony of her attorney who was advising and directing her, deliberately and wilfully violated that principle of equity. Said executrix apparently, according to her own testimony, was concerned chiefly in caring for her own, although by so doing she was sacrificing the interest of plaintiffs. *Page 49 
"Q. You stated, Mrs. Wood, that you were so anxious to pay these girls, weren't you? A. Yes, sir, at all times.
"Q. Why didn't you pay them? A. I didn't have any money.
"Q. Why didn't the John Wood Iron Works declare a dividend as you were directed in the will?
A. There wasn't anything to declare a dividend on.
"Q. Didn't you have $6,000 in April, 1915? A. We may have had.
"Q. Why didn't you then declare a dividend to pay them? A. Because that would only give us $1,000 to operate the iron works. * *
"Q. After the report of the auditor had been made it was discovered by you, as president of the corporation, that there was approximately $6,000 cash on hand; is that not true? A. I believe it is true.
"Q. Why didn't you then call a meeting of the Board of Directors, as provided in the will, and declare a dividend and pay these girls a thousand dollars dividend? A. How could I? That would leave us just $1,000 to run the iron works. One thousand dollars would be used up in one pay day. We had no supplies on hand. We had to replenish our supplies. * *
"Q. As I take it, you believed it was to the best interests of John Wood Iron Works to retain that cash on hand instead of declaring a dividend and paying the bequests to the girls? A. Yes, sir.
"Q. And that is the reason why you didn't do it? A. Yes, sir."
The record clearly shows that at the time referred to in the testimony the assets of the said iron works exceeded $40,000 and the indebtedness was a little more than $2,000. After more than a year and the plaintiffs had importuned repeatedly to be paid the $1,000 provided for them in the will to be paid soon after the death of their father, defendant executrix induced plaintiffs, who began to believe they would *Page 50 
not receive anything if they did not get a settlement soon, to accept $6,000 in full payment of the $10,000 provided for them in the will. Defendant then borrowed the money to pay them. This was after she had operated the iron works for more than a year and at a heavy loss. It would seem that she could have borrowed the money much more easily in April or May, 1915, before incurring that loss for operating expenses, than she could borrow such a large sum in 1916 with which to pay the legacies. She doubtless would have declared a dividend and paid the legatees the $1,000 then due them had she not believed that to have done so would have been injurious to her interests.
An executrix is a trustee and a trustee is not permitted to sacrifice for her own benefit the interest of her cestui quetrust. The vice of the position of defendant is that her conduct gave her the opportunity to depress the value of the legacies, and placed in her hands the power of procuring their legacies at a very heavy discount, notwithstanding the fact that the estate was solvent. This conduct the law absolutely prohibits as is fully shown by the authorities cited above.
We do not believe that defendant intentionally and wilfully conducted the affairs of said iron works for the purpose of depressing the value of the plaintiff's legacies, but to uphold what she did do is to put within the power of a trustee so to conduct the business of his cestuis as to do that very thing. That thing is abhorred by the law and prohibited by public policy. The result is just the same whether the trustee so conducted herself for the purpose of taking an unfair advantage of her cestuis que trustent or whether she did it in her own interests without any *Page 51 
intention at all to injure her cestuis que trustent. The law prohibits a trustee from so manipulating the property of thecestuis que trustent as to reap profit at the latter's expense. The defendant in the instant case has reaped a large profit by the way she conducted the affairs of the estate. At the time she purchased the legacies from plaintiffs she was the owner of more than 90 per cent of the capital stock of said iron works. She owned something over six shares in her own right and over ninety-two shares as executrix. Those shares belonged to her. She refused to follow the directions of the will and seems to have conducted the business as executrix with a view looking solely to her own welfare. Public policy forbids any trustee from doing that at the expense of the cestui que trust.
It is earnestly urged that plaintiffs are of age, in possession of their faculties, and were represented by able counsel when they made the settlement which was sanctioned by the probate court.
As a rule courts favor settlements. This rule is not applicable, however, where a settlement is attempted to be made against public policy. An illustration is that courts will not permit a collusive divorce, notwithstanding it may be the adjustment of long-continued differences. Courts do not permit married people to agree to be divorced because to do so is against public policy. For the same reason courts will not permit an executor or other trustee to deal with his cestui que trust
to the disadvantage of the latter.
The record, in the instant case, clearly shows that the executrix, the defendant, refused to obey the mandates of the will, refused to declare a dividend and pay the legacies as directed by the will, refused to *Page 52 
borrow money for that purpose until the legatees, doubtless in fear of losing all, compromised by accepting 60 per cent of the value of their legacies. The defendant executrix then borrowed the money. In other words, the executrix used her position of trust to profit herself instead of for the advantage of cestuisque trustent. She will not be permitted to retain the profit so acquired.
The other cause of dispute is based upon plaintiffs' right to two thirds of the shares of the capital stock of the said iron works bequeathed to John Wood, Jr. By the terms of the will the shares so bequeathed to him were to be distributed to plaintiffs and defendant, two thirds to the former and one third to the latter in case said John Wood, Jr., died before he became twenty-one. He died at the age of nineteen, in 1922. In the contract between plaintiffs and defendant whereby the latter paid the former $6,000 for $10,000, a clause was embodied transferring to defendant the contingent interest of the plaintiffs in the shares of stock bequeathed to the said John Wood, Jr. Since we have held that the contract between plaintiffs and defendant for the purchase of the legacies is void because constructively fraudulent, it follows that the pretended purchase by defendant of the interest of plaintiffs in the capital stock bequeathed to John Wood, Jr., is also void. We think it is on another ground also. There is no consideration for the sale and transfer. Defendant should have paid to plaintiffs $10,000 when she paid them only $6,000. There was then no consideration for the assignment and transfer of the shares bequeathed to John Wood, Jr. We think that plaintiffs are entitled to two thirds of the shares so bequeathed to John Wood, Jr., and all dividends thereon after his death, *Page 53 
and to $4,000 additional on account of the legacies bequeathed to them.
The decree of the Circuit Court is reversed and one will be entered here in harmony with this opinion.
REVERSED. REHEARING DENIED.
McBRIDE, BROWN and BELT, JJ., concurring.