Argued March 21; affirmed April 11, 1933

MATTHEWS ET AL. *v.* TAYLOR ET AL.

(20 P. (2d) 806)

*Wallace P. Carson,* of Salem (Carson & Carson, of Salem, and Marks & McMahan, of Albany, on the brief), for appellants.

*Mark V. Weatherford,* of Albany (Weatherford & Wyatt, of Albany, on the brief), for respondents.

BEAN, J. It appears from the record that Nancy York, a widow and mother of the three plaintiffs, came to Oregon from Tennessee in 1898. She married Joel S. Faulkner. No children were born to this union and the three plaintiffs remained the only heirs at law of Nancy York Faulkner. Upon her marriage Nancy Faulkner gave her husband what money she possessed, as to the amount of which there is some conflict in the testimony. Plaintiffs claim this money was used by Faulkner in paying off mortgages. The Faulkners sold the farm, title of which was in the name of Joel S. Faulkner, and took a mortgage back in the names of Joel and Nancy Faulkner. In 1922 Nancy Faulkner died intestate, and Joel S. Faulkner proceeded to collect the interest on this mortgage until 1927. He then proceeded to administer on the estate of Nancy Faulkner and her half of the mortgage was appraised at $4,596.51. There is little controversy but that the above-named sum was her half of the mortgage, not including accrued interest. Plaintiffs' half of this mortgage aggregated $2,298.25 with 6 per cent interest thereon for five years. Faulkner owned a small 30-acre farm and a few other items of property, but his principal source of income from which he supported himself was the interest on the mortgage.

On April 9, 1927, Faulkner remarried. Life with his second wife, Maud M. Duncan Faulkner, was not harmonious and a decree of divorce in favor of Faulkner was rendered August 23, 1927. No issue was born to that marriage. Apparently in an effort on his part to

place this mortgage beyond the reach of his second wife he consulted his attorneys in regard to transferring this mortgage to defendant Beaunah A. Taylor and was advised that he could not do this for the reason that the heirs at law of Nancy York Faulkner owned an undivided one-fourth thereof and Faulkner owned an undivided three-fourths, and that it would be necessary to administer the estate of Nancy York Faulkner. This he proceeded to do and was appointed administrator of her estate. He then caused some assignments in blank to be prepared and stated to his counsel that he would undertake to acquire the interest of the heirs at law of Nancy York Faulkner in the mortgage.

It appears that the plaintiffs were not fully aware of the interest they had in the mortgage until shortly before this suit was filed, nor did they know the exact nature of their mother's estate. Each of the three stepchildren thought their mother had contributed about $3,000 to the joint savings and accumulation of the Faulkner property. This matter appears to have been adjusted when the Neuschwander mortgage was executed in consummation of the family arrangement. Faulkner, while acting as administrator of his deceased wife's estate, proceeded to acquire the interest of the three plaintiffs in the one-half interest in the mortgage owned by Nancy Faulkner at the time of her death. Defendants claim that he bought that interest, aggregating approximately $3,000, for $300. Plaintiffs claim that Faulkner stated to them that if they would assign their interest in their mother's estate to him, in consideration thereof he would pay each of them $100 in cash and will all of the property at the time of his death to the three plaintiffs and Beaunah A. Taylor,

each an undivided one-fourth thereof; that plaintiffs accepted this proposition and did, for the consideration aforesaid, agree to convey their interest in their mother's estate to Joel S. Faulkner. Faulkner stated to them that he had papers for their signatures carrying out the agreement in the possession of Orville Taylor, husband of Beaunah A. Taylor, and that they could go and sign these papers and he would make a will carrying out the agreement. Plaintiff signed the papers which Faulkner had prepared for their signatures and fully carried out their part of the agreement. Faulkner made two wills, one of which is not very satisfactorily accounted for in the evidence, nor the terms clearly stated. It is, however, shown that the plaintiffs were named in this will. He later made a will, which was probated, in which plaintiffs are not named and nearly all of his property is devised and bequeathed to Beaunah A. Taylor. Faulkner, by an assignment containing a fictitious consideration, $5,000, transferred the mortgage to Beaunah A. Taylor; yet he appears to have retained possession and control of the note and mortgage, and same was deposited for collateral in the Albany State Bank to secure a loan of long-standing made by Faulkner, and this note was in the bank at the time of his death. Plaintiffs seek to hold Beaunah A. Taylor as trustee of the mortgage which was assigned to her.

While the testimony of the three stepchildren is expressed in different language, in regard to the contract, it is practically to the same effect. Homer York, after describing details, testified that Faulkner said:

" 'I wish you would sign over your part of your mother's estate to me as long as I live, and if you will do that I will make a will dividing everything equally between you three children and Beaunah.' He says

'you know how it is with Beaunah; I want her to have her part.' I said 'that's perfectly all right with me, Dad; go ahead and do that if you want to' ".

■ The circumstances corroborate the testimony of the witnesses for plaintiffs. It would not be profitable to set up the testimony of the case at length, much of which is distasteful. A careful reading of the testimony causes us to believe that the main allegations of plaintiffs' complaint are supported thereby and that the decree of the circuit court was proper and just.

The defendants contend that the alleged agreement is within the statute of frauds, and not being in writing its existence cannot be established by competent proof. Plaintiffs depend upon a performance, that is, the assignment and transfer of the Neuschwander note and mortgage by plaintiffs to Faulkner, in reliance upon the agreement, so as to take the case out of the statute in a court of equity.

■ Where the oral contract provides for the execution of a conveyance and that the grantee shall retain possession and ownership of the property during his life, and he agrees, in consideration of the conveyance, to will the property owned by him upon his death to the plaintiffs, the contract becomes an executed contract on the part of the plaintiffs and is no longer within the operation of the statute of frauds. *Webb v. Woodcock,* 134 Or. 319 (290 P. 751) ; *Stephens v. Tipton,* 128 Or. 115 (268 P. 1014).

The testimony shows that Faulkner, in consideration of plaintiffs' assigning to him their interest in their mother's estate, which embraced her one-half interest in the Neuschwander mortgage, plaintiffs' interest amounting to about $3,000, promised the plaintiffs that he would will to them and Beaunah A. Tay-

lor, his daughter, each a one-fourth interest of all the property of which he died seized and possessed, if he could have the use of the property during his life.

The case is much like that of *Webb v. Woodcock,* supra. In that case one James H. Palmer married the mother of plaintiffs, three sisters. The mother predeceased her husband. Notes and mortgages were held in the name of the husband and wife. After a considerable time the husband, who had the impression that the right of survivorship applied to the notes and mortgages in the entirety and that they belonged to him, discovered that the three girls had an interest in the estate. He then proceeded to administer the same. He made an agreement with the girls that if they would let him retain their mother's interest in the mortgages, upon his death he would will all the property to the three girls. Suit was brought for the purpose of enforcing this contract, the deceased having died by suicide a few days after the contract, and this court enforced the contract, allowing $1,000 to defendant.

Faulkner's contract with plaintiffs was a natural one. He was living on a small place, with but little income, and had used the interest on the mortgage for about five years, while he thought it belonged to him, and it was his desire to settle the matter in such a way that he would have the benefit of the interest and the mortgage during his lifetime. He married the second time and questions in regard to property were settled upon their being divorced. Plaintiffs, although they did not fully understand the condition of the property, in reality took the chance of the property being diminished to little or nothing during the life of Faulkner. The contract was fair, equitable and mutual and was based upon an adequate consideration. It would have

been illegal and fraudulent for Faulkner to have obtained the interest of plaintiffs in their mother's estate for only $300 while he was administrator of her estate and represented the interest of her three children. Plaintiffs lived up to their part of the contract.

An executor or administrator is trustee of the heirs, interested in an estate, or beneficiaries of the will that is being administered. *Wells v. Wood,* 125 Or. 38, 46 (263 P. 54); *Re Roach's Estate,* 50 Or. 179, 186 (92 P. 118). And it is the duty of the trustee in dealing with beneficiaries to fully inform them in regard to the value of the property and the nature of their interest in it. *Jones v. Byrne,* 149 Fed. 457, 465; *Ludington v. Patton,* 111 Wis. 208 (86 N. W. 571, 580).

It is contended by defendants that the testimony in support of the contract is indefinite. If witnesses upon the part of plaintiffs are believed and the trial court, who saw and heard the witnesses, believed them, and we think properly, we think the contract was definite, plain, mutual and founded upon an adequate consideration. *Richardson v. Orth,* 40 Or. 252 (66 P. 925, 69 P. 455).

The assignments of the interests of plaintiffs in their mother's estate, which were identical in form, after mentioning the interest of Nancy A. Faulkner in the mortgage, were as follows: "I, the undersigned, do hereby sell, assign, set over and transfer all of my right, title and interest in and to the estate of said Nancy A. Faulkner to Joel S. Faulkner.   *   *   *"

It will be noticed that there was an attempt to assign whatever interest the three children had in the estate of their mother, whether it was real or personal property. It would have been possible for the mortgage in question to be transmuted to a title in the land mort-

gaged by foreclosure during the administration of the estate of Nancy A. Faulkner. A mortgage partakes somewhat of the nature of real estate.

It was contended on the part of defendants that Faulkner did not possess the Neuschwander mortgage at the time of his death. The assignment by him to Beaunah A. Taylor, for a fictitious consideration named as $5,000, was evidently made because it had some effect upon the settlement with his second wife. Beaunah delivered the note back to her father and he hypothecated it to the bank for a loan. This was agreeable to her and we think that the note carried the mortgage with it and the interest of Beaunah A. Taylor in the Neuschwander mortgage was not a legal one. The trial court declared, in effect, that she held this mortgage in trust for the plaintiffs and herself.

We concur in the rule laid down in *Hawkins v. Doe,* 60 Or. 437, 441 (119 P. 754, Ann. Cas. 1914A, 765), as follows:

"Where the contract rests wholly in parol and the alleged promisor is dead, courts should demand clear and satisfactory proof of the terms of the agreement, and its strict performance by the promisee. * * *"

In *Brennen v. Derby,* 124 Or. 574, 581 (265 P. 425), this court quoted with approval from the case of *Stellmacher v. Bruder,* 89 Minn. 507 (95 N. W. 324, 99 Am. St. Rep. 609), as follows:

"If the contract be an oral one to devise land, and is reasonably certain as to its subject-matter and its stipulations, equity will decree specific performance, if there has been a part performance of such a character as will take a parol agreement to convey land out of the statute of frauds upon principles which courts of equity recognize and act upon. If the consideration for the contract be labor and services which may be esti-

mated and their value liquidated in money, so as reasonably to make the promisee whole, specific performance will not be decreed''.

Defendants invoke the rule that where full compensation may be had by way of damages, the promisees should be left to pursue their remedy at law. In the present case the plaintiffs assigned a portion of the interest of their mother in the Neuschwander note and mortgage. Faulkner, for about three years thereafter and about five years before, collected the interest and used the same, and used the note as collateral. Plaintiffs performed their part of the contract and, as in the case of *Webb v. Woodcock,* supra, we think there has been a sufficient performance of the contract upon the part of plaintiffs to take the case out of the statute of frauds, so a court of equity should enforce the contract as near as may be. Plaintiffs should not be relegated to an action at law. This case comes fairly within the cases cited in the able brief of counsel for defendants, as far as the same are applicable. An executed promise made in consideration of an agreement to make a will takes the case out of the statute of frauds. *Hansen v. Oregon Humane Society,* ante p. 104 (18 P. (2d) 1036); *Tate v. Emery,* 139 Or. 214 (9 P. (2d) 136); *Popejoy v. Boynton,* 112 Or. 646 (229 P. 370, 230 P. 1016); *Woods v. Dunn,* 81 Or. 457, 468 (159 P. 1158). We know of no way in which the rights of plaintiffs could be fully protected otherwise.

The decree of the lower court should be affirmed. It is so ordered.

RAND, C. J., CAMPBELL and BAILEY, JJ., concur.